IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Civil Action No. 06-00520-GMS, 06-00521-GMS

In re:  NELLSON NUTRACEUTICAL, INC., et al.

*Debtors.*

Bankruptcy Case No. 06-10072 (CSS)

**UNITED STATES TRUSTEE AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

*Appellants,*

v.

**NELLSON NUTRACEUTICAL, INC., et al.**

*Appellees.*

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
(Christopher S. Sontchi, Judge)

**APPENDIX RELATED TO BRIEF IN SUPPORT OF APPELLEES'
MOTION TO DISMISS APPEAL ON MOOTNESS GROUNDS**

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

Counsel for the Appellees

DATED:    June 26, 2007

# **TABLE OF CONTENTS**

|  | **TAB NO.** | **PAGE NO.** |
|---|---|---|
| Motion of the Debtors for Entry of an Order Authorizing and Approving Payments Under Management Incentive Plan | 1 | 001 |
| Order Authorizing and Approving Payments Under Management Incentive Plan | 2 | 039 |
| Notice of Appeal from Order Granting Debtors' Motion for Entry of an Order Authorizing and Approving Payments Under Management Incentive Plan (Related to Docket Entry No. 482) filed by the Office of the United States Trustee | 3 | 052 |
| Notice of Appeal filed by the Official Committee of Unsecured Creditors | 4 | 056 |

DOCS_DE:128561.1

# A-1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: **May 16, 2006 at 4:00 p.m. prevailing Eastern time**
Hearing Date: **May 24, 2006 at 2:00 a.m. prevailing Eastern time**

## NOTICE OF MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING PAYMENTS UNDER MANAGEMENT INCENTIVE PLAN

TO: (i) Office of the United States Trustee, (ii) Counsel to the Official Committee of Unsecured Creditors, (iii) counsel to UBS AG Stamford Branch, and (iv) Parties required to receive notice pursuant to Del. Bankr. LR 2002-1.

The above-captioned debtors and debtors in possession (the "Debtors") filed the

*Motion of the Debtors for Entry of an Order Authorizing and Approving Payments Under*

*Management Incentive Plan* (the "Motion") with the United States Bankruptcy Court for the

District of Delaware, 824 Market Street, Wilmington, Delaware 19801 (the "Bankruptcy

Court"), seeking the Court's authorization, under sections 105(a), 363(b) and 503(b) of the

Bankruptcy Code, to implement the Management Incentive Plan (as defined in the Motion).

Objections and other responses to the relief requested in the Motion, if any, must

be in writing and be filed with the Bankruptcy Court no later than **4:00 p.m. prevailing Eastern**

**Time on May 16, 2006.**

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc., a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.

APPELLEES' APPENDIX
PAGE 001

DOCKET # 334
DATE 4/28/06

Any objections or other responses to the Motion, if any, must also be served so that they are received not later than **May 16, 2006** at 4:00 p.m. prevailing Eastern Time, by (i) Pachulski Stang Ziehl Young Jones & Weintraub LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 Attn: Laura Davis Jones, and (ii) Pachulski Stang Ziehl Young Jones & Weintraub LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: Maxim B. Litvak.

IF NO OBJECTIONS ARE TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

APPELLEES' APPENDIX
PAGE 002

IN THE EVENT THAT ANY OBJECTION OR RESPONSE IS FILED AND

SERVED IN ACCORDANCE WITH THIS NOTICE, A HEARING ON THE MOTION WILL

BE HELD BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI AT THE

BANKRUPTCY COURT ON **MAY 24, 2006 AT 2:00 P.M. PREVAILING EASTERN**

**TIME.**

Dated:  April 28, 2006  PACHULSKI STANG ZIEHL YOUNG JONES &
         WEINTRAUB LLP

         *Rachel L. Werkheiser*

         Laura Davis Jones (Bar No. 2436)
         Richard M. Pachulski (CA Bar No. 90073)
         Brad R. Godshall (CA Bar No. 105438)
         Maxim B. Litvak (CA Bar No. 215852)
         Rachel Lowy Werkheiser (Bar No. 3753)
         919 North Market Street, 17th Floor
         P.O. Box 8705
         Wilmington, DE  19899-8705 (Courier 19801)
         Telephone:  (302) 652-4100
         Facsimile:  (302) 652-4400
         Email: ljones@pszyjw.com
           rpachulski@pszyjw.com
           bgodshall@pszyjw.com
           mlitvak@pszyjw.com
           rwerkheiser@pszyjw.com

         Counsel for Debtors and Debtors in Possession

APPELLEES' APPENDIX
PAGE 003

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING PAYMENTS UNDER MANAGEMENT INCENTIVE PLAN

The above-captioned debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors"), hereby move this Court for entry of an order pursuant to sections 105(a), 363(b) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") approving the performance-based Management Incentive Plan (as described in greater detail herein) (the "Management Incentive Plan"). In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b) and 503(b) of the Bankruptcy Code.

---

[1]  The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc., a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.

## Background

A.    **Description of the Debtors**

      3.     The Debtors are leading formulators and manufacturers of functional nutrition bars and powders. The Debtors manufacture food bars and powders for weight loss, sports training and wellness and medical categories. The Debtors have approximately 425 employees in the United States and, through a non-debtor Canadian subsidiary, approximately 784 employees in Canada. The Debtors' headquarters and principal manufacturing facility is located in Irwindale, California. Specifically, the Debtors (and their non-debtor Canadian affiliate) operate three highly modern manufacturing facilities, which are located in Irwindale, California, Salt Lake City, Utah and Montreal, Canada.

      4.     The Debtors do not manufacture products under their own label, but produce for leading industry functional food marketers. As a result of such relationships, the Debtors are the clear market leader with over 50% of the functional bar market and over three times the sales of their next largest bar competitor.

      5.     The Debtors typically provide the majority of the product lines of their customers under two to three-year exclusive contracts with pre-established pricing and have long-term contracts in place with certain key customers. Unique to this type of company, the Debtors own the rights to the majority of the formulations developed for customers and hold proprietary knowledge with regard to temperatures, mix times, order of addition and other preparation procedures around these formulations.

APPELLEES' APPENDIX
PAGE 005

B.    **The Debtors' Corporate Structure And Financial Performance**

6.    Nellson is wholly-owned by Nellson Intermediate, which in turn, is owned by Nellson Holdings. Nellson is the direct parent and sole shareholder of Nellson Northern, Vitex and Nellson Eastern. Vitex is the sole shareholder of Nellson Powder. In 2003, Nellson acquired a Canadian manufacturer of nutritional bars and powders called Bariatrix Products International, Inc., which is now Nellson's wholly-owned, non-debtor operating subsidiary in Canada "Nellson Nutraceutical Canada, Inc." ("Nellson Canada"). Nellson is a privately held company. Its principal ultimate equity holder (by way of Nellson Holdings and Nellson Intermediate) is Fremont Investors VII, LLC ("Fremont").

7.    Nellson's consolidated revenues for all business segments (including Nellson Canada) for calendar year 2005 totaled $296.8 million. Nellson generated positive earnings for 2005 (before deductions for interest, taxes, depreciation and amortization) in the amount of $40.8 million (unaudited). Although Nellson realized a net consolidated loss for the year in the amount of $22.6 million, such loss is unrelated to the company's ordinary course operations and is tied primarily to interest expenses and non-cash items. For calendar year 2004, Nellson's consolidated revenues totaled approximately $350 million, with earnings (before deductions for interest, taxes, depreciation and amortization) in the amount of $53 million. As of the Petition Date, the Debtors had $15.9 million in cash on hand (excluding Canada). Debtors currently have approximately $24 million in cash on hand (approximately $30 million including Canada).

APPELLEES' APPENDIX
PAGE 006

C.    **The Debtors' Principal Indebtedness**

8.    The Debtors (with the exception of Nellson Holdings and Nellson Intermediate) have three tranches of principal indebtedness consisting of (1) first priority secured obligations to various lenders (the "First Lien Prepetition Lenders") under that certain Amended and Restated Credit Agreement dated as of July 3, 2003 (as amended, modified or supplemented, the "First Lien Credit Agreement"), pursuant to which UBS AG, Stamford Branch ("UBS") is the administrative agent and collateral agent ("First Lien Agent"); (2) second priority secured obligations to various lenders (the "Second Lien Prepetition Lenders" and collectively with the First Lien Prepetition Lenders, the "Prepetition Lenders") under that certain Second Lien Credit Agreement dated as of February 11, 2004 (as amended, modified or supplemented, the "Second Lien Credit Agreement"), pursuant to which UBS is also the administrative agent and collateral agent (the "Second Lien Agent," and together with the First Lien Agent, the "Prepetition Agent"); and (3) unsecured obligations to trade vendors, lessors, and others.

9.    Nellson is the borrower and the other Debtors (with the exception of Nellson Holdings and Nellson Intermediate) are guarantors under both the First Lien Credit Agreement and the Second Lien Credit Agreement (together, the "Credit Agreements"). The Debtors' obligations under the Credit Agreements are secured by first and second liens, respectively, on substantially all of the Debtors' assets. Nellson Intermediate Holdings has also pledged the stock of Nellson to further secure the obligations under the Credit Agreements.

10.    As of the Petition Date, the Debtors' outstanding principal obligations under the First Lien Credit Agreement total approximately $255 million. The Debtors' principal

obligations under the Second Lien Credit Agreement total approximately $75 million as of the Petition Date.

11.     The Debtors' remaining indebtedness consists of unsecured debt totaling approximately $7 million, exclusive of intercompany obligations or potential rejection damages claims. Nellson Holdings also has unsecured subordinated debt obligations to Fremont in the original principal amount of $39.5 million.

**D.     The Necessity of Filing These Cases**

12.     Beginning in the latter part of 2004 and continuing through 2005, the Debtors' business was negatively impacted by a sequence of factors, including weaknesses in the market for nutritional bars and powders and challenges in the company's production processes. As a general matter, the market for nutritional bars and powders experienced a substantial downturn as a result of a waning low-carb diet trend and an overall softness in the weight-management industry. Concurrently with such market fluctuation, the Debtors lost a significant customer and experienced productivity issues that reduced margins within the company's bar manufacturing facilities. The Debtors began to address these challenges pro-actively by expanding the company's marketing efforts to drive higher revenues and pursuing various initiatives, including cost-savings measures, to resolve any performance gaps. Through these initiatives, the Debtors expect to increase their profitability back to historic levels.

13.     Nonetheless, in November 2004, the Debtors' operational performance triggered certain defaults of financial covenants in the Credit Agreements. As a result, the Prepetition Lenders and the Debtors commenced discussions regarding a restructuring of the company's debt and equity structure. On December 21, 2005, UBS sent notices of acceleration

APPELLEES' APPENDIX
PAGE 008

of the Debtors' obligations under the Credit Agreements to Nellson and Fremont. The Debtors, Fremont and UBS continued to engage in negotiations in an effort to reach a consensual restructuring, but were unable to reach a resolution. The Debtors therefore commenced these cases in order to reorganize the Debtors' affairs and prevent UBS from exercising its remedies against the Debtors' assets to the detriment of all constituents.

14.    The Debtors' goal during these chapter 11 cases is to maintain and expand their cash flow positive operations while the issues relating to the restructuring of the Debtors' debt and equity structure are resolved in an orderly manner, thereby maximizing enterprise value for all stakeholders.

### E.    Post-Petition Activity

15.    On January 28, 2006 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also filed motions or applications seeking certain typical "first day" orders.

16.    The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

17.    No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

18.    The Debtors have done everything possible since the Petition Date to minimize disruptions to their business. Specifically, the Debtors have (i) maintained and continued their employee programs, including paying their employees their prepetition wages up

APPELLEES' APPENDIX
PAGE 009

to $10,000, see Docket No. 37; (ii) maintained their prepetition cash management systems, see

Docket No. 246; (iii) continued their customer practices and programs to make the transition into

bankruptcy seamless for the customers, see Docket No. 32; (iv) established an escrow account to

give their utility suppliers adequate assurance of future performance, see Docket No. 133;

(v) received authority to use up to $2 million dollars to pay prepetition claims of certain critical

vendors, see Docket No. 36; (vi) resolved claims pursuant to 11 U.S.C. §503(b)(9) and obtained

Court approval of procedures to stream-line settlements of such claims, see Docket No. 259; and

(vii) assumed the lease, as amended, relating to the Debtors' manufacturing facility, see Docket

No. 261.

**F.    Progress Towards a Consensual Plan of Reorganization**

   19. Without divulging the details of confidential settlement negotiations,

meaningful settlement negotiations with UBS have occurred both prior to and following the

Petition Date. It has become increasingly apparent, however, that divergent opinions concerning

the value of the Debtors' enterprise continue, albeit in the absence of actual, expert-prepared

valuation reports. These divergent opinions exist even within various factions of the Pre-Petition

Lenders. It has become obvious that an adjudication of the "valuation issue" is a necessary

predicate to a consensual plan of reorganization.

**G.    Former Employee Bonus Plans**

   20. In January 2006, prior to the Petition Date, the Debtors implemented a key

employee retention program (the "KERP") that provided for payment to nine key employees in

the aggregate amount of $710,000 upon the occurrence of the earlier of either a termination of

employment (without cause) or a capital event involving a disposition of the Company's assets or restructuring of its equity structure.

## Relief Requested

21.  By this Motion, the Debtors seek the Court's authorization, under sections 105(a), 363(b) and 503(b) of the Bankruptcy Code, to implement the Management Incentive Plan and to allow all payments thereunder as administrative expenses of the estates.

22.  Pursuant to the Management Incentive Plan, as detailed more fully on Exhibit A, the Debtors seek to establish a bonus pool to provide incentives to key management personnel (each an "Employee" and collectively, the "Employees") to assist the Debtors in their efforts to reorganize the Debtors' business and maximize value for all stakeholders.[2]

## Description of the Management Incentive Plan

23.  The Debtors seek to provide incentive compensation to the Employees as needed to ensure the Employees' continued service to the Debtor through the expected reorganization of the Debtors' businesses.  A summary of the Management Incentive Plan[3] is as follows:

> Performance-Based Milestones – The Management Incentive Plan provides that
> an Employee will receive a bonus payment upon reaching various performance
> milestones as described below.  The aggregate maximum amount to be paid under

---

[2]  The identities of each Employee and the amounts designated under the Management Incentive Plan have been disclosed to the following: (i) counsel to the Official Committee of Unsecured Creditors; (ii) counsel to UBS AG; (iii) counsel to the Committee of First Lien Holders; and (iv) the Office of the United States Trustee.  As the Debtors believe that this information is sensitive and fully disclosed to the representatives of the Debtors' creditor constituencies, the Debtors, in their business judgment, are not disclosing this information herein.

[3]  The following summary is qualified in its entirety by the Management Incentive Plan.  In the event of a discrepancy between the summary and the Management Incentive Plan, the Management Incentive Plan shall control.

APPELLEES' APPENDIX
PAGE 011

the performance-based component of the Management Incentive Plan is $1.395

million, subject to reduction as provided below if the Milestones, as defined

herein, are not met.

(1)    Performance measurement criteria will be earnings before deductions for interest, taxes, depreciation and amortization ("Budgeted EBITDA"), excluding costs associated with the reorganization (including professional fees), as reflected on the projected 2006 Budget (the "Budget"), as previously delivered to counsel for UBS, counsel for the Official Committee of Unsecured Creditors ("Committee"), and the Unofficial Committee of First Lien Lenders.

(2)    Performance Milestone #1:  If the Debtors meet the performance criteria set forth in the Budget during the two fiscal quarters ending July 2, 2006 (approximately January through June) (the "First Half"), the Debtors will establish a fund, to be distributed as set forth on Exhibit A, in the maximum amount of $680,000, subject to reduction as provided below.

(3)    Performance Milestone #2:[4] If the Debtors meet the performance criteria set forth in the Budget during the two fiscal quarters ending December 31, 2006 (approximately July though December) (the "Second Half"), the Debtors will establish a fund, to be distributed as set forth on Exhibit A, in the maximum amount of $715,000, subject to reduction as provided below.

(4)    If a Plan of Reorganization is confirmed on or before December 31, 2006, the incentive payments associated with Performance Milestone #1 and Performance Milestone #2 payments will be vested.  If the Debtors' businesses are liquidated, then incentive pay set forth in Performance Milestone #2 will not be paid.  (A sale as a going concern is not considered a "liquidation.")

(5)    If actual EBITDA for the First Half or the Second Half, is less than 100% of the Budgeted EBITDA for the First Half or the Second Half, the incentive payments for the respective half for which actual EBITDA was less than Budgeted EBITDA shall be reduced as follows: (i) if such actual EBITDA is seventy-five percent (75%) or more of

---

[4]  Performance Milestone #1 and Performance Milestone #2 are collectively referred to herein as the "Milestones."

such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA and (ii) if such actual EBITDA is less than seventy-five percent (75%) of such Budgeted EBITDA, by seventy-five percent (75%). If the Budgeted EBITDA is missed by more than 50%, then no incentive payments would be made for that respective period by the Debtors.

(6)     Incentive payments will become due and payable after the Debtors' books are closed at the end of the First Half and the Second Half, respectively. EBITDA calculations will be based on un-audited financials that will be provided to the Committee and counsel to UBS no less than three (3) business days' prior to the payments being made.

(7)     By participating in this Management Incentive Plan, each Employee agrees that he or she thereby waives and releases, effective upon receipt of an incentive payment, any and all claims against the Debtors arising under the KERP. If the Employee does not receive any incentive payment to which he or she is entitled under the Management Incentive Plan on or before the completion of the Management Incentive Plan, such waiver and release shall be void and of no force and effect, and in such case the Employee shall retain all rights to such claim under the KERP.

24.     The Debtors submit that the approval of the Management Incentive Plan will ensure a successful reorganization of the Debtors' businesses by establishing milestones of accomplishment based on the Debtors' earnings and will give the Employees incentives to reach these milestones.

## Basis for Relief

25.     The Management Incentive Plan is an important part of the Debtors' ability to reorganize the Debtors' business. The Debtors reasonably believe that the implementation of the Management Incentive Plan is necessary to appropriately compensate the Debtors' management employees given the enormous additional burdens placed on such

APPELLEES' APPENDIX
PAGE 013

employees by these Cases, and to ensure that the Employees remain motivated to perform the

important tasks necessary to ensure successful reorganization of the Debtors' businesses.

Indeed, if the Debtors are not authorized to implement this program, the dedication, confidence

and cooperation of their management employees would suffer at a critical juncture in the

Debtors' reorganization efforts.

A.    **Implementation of the Management Incentive Plan
      Pursuant to Section 363(b) of the Bankruptcy Code is a
      Valid Exercise of the Debtors' Business Judgment**

26.    The Court may authorize the Debtors to implement the Management

Incentive Plan under section 363(b)(1) of the Bankruptcy Code.  Section 363(b)(1) provides that

"[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).[5]  The use, sale, or lease of property

of the estate, other than in the ordinary course of business, is authorized when a "sound business

purposed" justifies such action.  See, e.g., In re Montgomery Ward Holding Corp., 242 B.R. 147,

153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program,

stated that "in determining whether to authorize the use, sale, or lease of property of the estate

under [section 363(b)], courts require the debtors to show that a sound business purpose justifies

such actions"); Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that

under normal circumstances, courts defer to a trustee's judgment concerning use of property

---

[5]   The Management Incentive Plan does not conflict with newly-enacted section 503(c)(1) of the Bankruptcy Code.  Section 503(c)(1) only applies to payments that are meant to induce insiders to "remain with the [debtors'] business" by requiring, among other things, that a debtor demonstrates that the insider (a) has a bona fide job offer from another business and (b) is "essential to the survival of the business."  11 U.S.C. §503(c)(1)(A) and (B).  The Management Bonus Plan is not intended to "induce" anyone to "remain with the Debtors' business," in any manner different than any other component of their management compensation.  (Obviously, all compensation is in some respect intended to induce employees to remain with their employer.)  Instead, the Management Incentive Plan is intended to create incentives for the Employees to reach certain performance goals and to facilitate the successful reorganization the Debtors' business.

APPELLEES' APPENDIX
PAGE 014

under §363(b) when there us a legitimate business justification); <u>In re Delaware & Hudson R.R.</u> <u>Co.</u>, 124 B.R. 169, 176 (D Del. 1991) (explaining that the Third Circuit has adopted the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); <u>see also</u> <u>Stephen</u> <u>Indus., Inc. v. McClung</u>, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); <u>Titusville County Club v.</u> <u>Pennbank (In re Titusville Country Club)</u>, 128 B.R. 396, 399 (Bankr. W.D. Pa 1991) (same).

27.    Courts have found that a debtors' use of reasonable retention bonuses and other incentives to retain employees is a valid exercise of a debtors' business judgment. <u>See,</u> <u>e.g.</u>, <u>In re America West Airlines, Inc.</u>, 171 B.R. 674, 678 (Bankr. D. Ariz 1994) (it is the proper use of a debtors' business judgment to propose bonuses for employees who helped propel the debtor successfully through the bankruptcy process); <u>In re Interco Inc.</u>, 128 B.R. 229, 234 (Bankr. E.D. Mo 1991) ("debtors' business judgment" was controlling in the approval of a "performance/retention program").

28.    Even since the recent amendments to the Bankruptcy Code which went into effect in October 2005, courts in this District have approved employee bonus programs tied to performance targets as valid exercises of business judgment. <u>See e.g.</u>, <u>In re Riverstone</u> <u>Networks, Inc.</u>, Case No. 06-10110 (CSS) (Bankr. D. Del. Apr. 3, 2006) (approving $1.4 million incentive plan for the debtors' management subject to certain parties' reservation of rights); <u>In re</u> <u>Pliant Corp.</u>, Case No. 06-10001 (MFW) (Bankr. D. Del. Feb. 21, 2006) (approving postpetition payments under a prepetition annual performance-based management incentive plan tied to both individual and corporate performance levels); <u>In re Nobex Corp.</u>, Case No. 05-20050 (MFW) (Bankr. D. Del. Jan 20, 2006) (approving "sale-related incentive pay" to two officers, contingent

on a successful sale of the company for a price in excess of that offered by an existing, stalking

horse bidder, in connection with the debtor's aggressively pursuing the sale of the company.).

29.     In the instant cases, the Debtors submit that authorizing the Debtors to

provide incentive compensation to the Employees will accomplish a similarly sound business

purpose.  The Debtors have determined that the costs associated with such additional postpetition

compensation are more than justified by the benefits that the Debtors will realize by creating

appropriate incentive for the Employees, whose experience, skills and diligent work are critical

for the Debtors to operate and reorganize their businesses.

30.     The additional bonus pay proposed in this Motion will provide these

Employees with the appropriate incentives to reach the Milestones, which are based on the

Debtors' performance and will enable the Debtors to maximize the value of their assets for the

benefit of the estates and their creditors.

**B.     The Management Incentive Plan May Additionally Be
        <u>Authorized Pursuant to Section 105(a) of the Bankruptcy Code</u>**

31.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any

order, process, or judgment that is necessary to carry out the provisions of [Bankruptcy Code]."

11 U.S.C. § 105(1).

32.     As stated, the Debtors strongly and reasonably believe that the

Management Incentive Plan is critical to their reorganization efforts.  With respect to the

Management Incentive Plan, such payments are essential to appropriately reward the Employees

for all of their efforts throughout these bankruptcy cases, to maintain the morale of the Debtors'

management and employees, and to ensure the focus of the Debtors' management and employees

APPELLEES' APPENDIX
PAGE 016

is centered on the reorganization process. The Debtors submit that such payments are necessary to maximize value for their estates, their creditors, and their shareholders.

33.    The Debtors respectfully submit that the post-petition compensation described herein for the Employees is an appropriate exercise of the Debtors' business judgment, is necessary and in the best interest of the Debtors, their creditors, and their estates and should be approved under sections 105(a) and 363(b) of the Bankruptcy Code and allowed as administrative expenses under 503(b) of the Bankruptcy Code.

## Notice

34.    Notice of this Motion has been given to the following: (i)  United States Trustee; (ii)  counsel to the Committee; (iii)  counsel to UBS; (iv)  counsel to the Committee of First Lien Holders; and (v)  all those parties requesting notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

APPELLEES' APPENDIX
PAGE 017

WHEREFORE, the Debtors respectfully request that his Court enter an order, in substantially the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: __April 28__, 2006

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

_Rachel J. Werkheiser_

Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszyjw.com
         rpachulski@pszyjw.com
         bgodshall@pszyjw.com
         mlitvak@pszyjw.com
         rwerkheiser@pszyjw.com

Counsel for Debtors and Debtors in Possession

# <u>EXHIBIT A</u>

APPELLEES' APPENDIX
PAGE 019

**Management Incentive Plan**

This Management Incentive Plan (this "Plan") of Nellson Nutraceutical, Inc. and the subsidiaries listed on the signature page hereto (collectively, "Nellson"), dated as of April ___, 2006, is adopted for the benefit of the Participants (as hereinafter defined).

**Recitals**

Nellson hereby acknowledges as follows:

A.      Nellson is engaged in the manufacturing of nutritional food bars and powders for weight loss, sports training and wellness and medical categories (the "Business").

B.      Nellson is debtor and debtor in possession in Case No. 06-10072 (PJW) (the "Case") before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in proceedings under Chapter 11 of the Bankruptcy Code.

C.      In the Case, Nellson is pursuing a restructuring of its debt and equity structure (the "Restructuring") to maximize the value of the Business for all constituents.

D.      Nellson believes that the successful accomplishment of the Restructuring depends, among other factors, on Nellson's ability to manage the Business in accordance with its budget.

E.      Nellson believes that the Participants are critical to the successful management of the Business in accordance with its budget, and that an incentive plan is both necessary and appropriate to encourage the Participants to devote their full time, attention, energy and effort to such management.

F.      Nellson wishes to clearly set forth the terms and conditions of such incentive plan.

**Terms and Conditions**

Nellson hereby agrees as follows:

1.      <u>Definitions</u>.  For purposes of this Plan, the following terms shall have the following meanings:

"Bankruptcy Court" has the meaning given to such term in the recitals to this Plan.

"Budget" means Nellson's Budget for fiscal year 2006 as previously delivered to the Committee and to UBS AG, Stanford Branch, as administrative agent and collateral agent for the Existing Senior Debt.

LA: 152124.3

1

"Budgeted EBITDA" means EBITDA as projected in the Budget, before professional fees, Incentive Bonuses under this Plan and other costs incurred by Nellson in connection with the Restructuring and the Case.

"Capital Event" means any or all of the following (whether in one or a series of related transactions):

(a)    any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended) other than Fremont Investors VII, LLC becomes the "beneficial owner" (as defined in Rule 13d-3 under said Act), directly or indirectly, of securities of Nellson representing fifty percent (50%) or more of the total voting power represented by the then outstanding voting securities of Nellson;

(b)    the conversion to equity of some or all of the debt owing by Nellson to the holders of the Existing Secured Debt and/or the holders of the Existing Other Secured Debt;

(c)    the date of the consummation of a merger or consolidation of Nellson with any other entity, other than a merger or consolidation which would result in the voting securities of Nellson outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) more than fifty percent (50%) of the total voting power represented by the voting securities of Nellson or such surviving entity outstanding immediately after such merger or consolidation;

(d)    the sale of substantially all of the assets of Nellson (whether in one or more transactions) as a going concern, and not in a liquidation; or

(e)    the confirmation of a plan of reorganization under chapter 11 of the United States Bankruptcy Code.

"Case" has the meaning give to such term in the recitals to this Plan.

"Chapter 11 Plan Effective Date" means the date on which a Chapter 11 plan of reorganization in the Case become effective.

"Committee" means the Official Committee of Unsecured Creditors in the Case.

"Constructive Termination" means the occurrence of any of the following prior to, or concurrently with, the occurrence of any Capital Event: (i) any actual or implied threat of discharge of Participant by Nellson under circumstances which would not constitute a Termination For Cause and which results in an involuntary resignation of employment by Participant (provided that clause (i) shall not apply to any actual or implied threat of discharge arising from any actual or possible Capital Event), (ii) any act(s) by Nellson which are designed to or have the effect of rendering Participant's working conditions so intolerable or demeaning on a recurring basis that a reasonable person would resign such employment, which act(s) result

LA: 152124.3

2

in the involuntary resignation of employment by the Participant prior to or concurrently with the occurrence of any Capital Event, (iii) a material adverse alteration in Participant's reporting relationships, position, responsibilities, title or status, which results in the involuntary resignation of employment by Participant prior to or concurrently with the occurrence of any Capital Event; (iv) a material reduction in Participant's compensation or a substantial reduction in benefits provided to Participant that are provided for or referenced hereunder; (v) any material change in any benefit, retirement, or deferred compensation plan or arrangement made available to Participant which is adverse to Participant; or (vi) any actual or proposed relocation of Participant to a location that is more than 35 miles from the location of Participant's current employment for Nellson as of the Effective Date, which actual or proposed relocation causes the Participant to resign from his or her employment prior to or concurrently with the occurrence of any Capital Event.

"EBITDA" means the earnings before interest, taxes, depreciation and amortization of Nellson, before professional fees and other costs incurred by Nellson in connection with the Restructuring and the Case and as determined by Nellson reasonably, in good faith, and in a manner consistent with Budgeted EBITDA.

"Effective Date" shall be the date on which this Plan is approved by the Bankruptcy Court.

"Existing Secured Debt" means any and all obligations of Nellson arising under that certain Amended and Restated Credit Agreement, dated as of July 3, 2003, and that certain Second Lien Credit Agreement, dated as of February 11, 2004, as such agreements may have been amended, supplemented or modified.

"First Half" means the two fiscal quarters ending July 2, 2006.

"First Half Incentive Bonus" means, with respect to a Participant, the dollar amount set forth opposite such Participant's name under the heading "First Half Incentive Bonus" on Exhibit "A" hereto, subject to adjustment under Section 2(d) hereof. To the extent that any individuals in addition to those listed on "Exhibit A" are designated as Participants in the discretion of Nellson, the First Half Incentive Bonus payable to such Participants shall not exceed $100,000 in the aggregate, as reflected on the "Emergency Contingency" line item on Exhibit "A."

"First Half Vesting Date" means, with respect to the First Half Incentive Bonus of any Participant, the first to occur of the following dates: (a) July 2, 2006, (b) the effective date of any Capital Event during the First Half, (c) the date during the First Half on which the Participant's employment with Nellson is terminated by Nellson for any reason other than a Termination For Cause, (c) the date during the First Half on which the Participant's employment with Nellson is terminated in a Constructive Termination, and (d) the Chapter 11 Plan Effective Date.

"Nellson" has the meaning given such term in the introductory paragraph of this Plan.

LA: 152124.3

3

APPELLEES' APPENDIX
PAGE 022

"Participant" means those individuals listed on Exhibit "A" hereto, plus any additional individuals that may be designated as Participants in the discretion of Nellson.

"Plan Payments" means the payments contemplated by this Plan.

"Restructuring" has the meaning given to such term in the recitals to this Plan.

"Second Half" means the two fiscal quarters ending December 31, 2006.

"Second Half Incentive Bonus" means, with respect to a Participant, the dollar amount set forth opposite such Participant's name under the heading "Second Half Incentive Bonus" on Exhibit "A" hereto, as adjusted by Section 3(d) hereof. To the extent that any individuals in addition to those listed on "Exhibit A" are designated as Participants in the discretion of Nellson, the Second Half Incentive Bonus payable to such Participants shall not exceed $100,000 in the aggregate, as reflected on the "Emergency Contingency" line item on Exhibit "A."

"Second Half Vesting Date" means, with respect to the Second Half Incentive Bonus of any Participant, the first to occur of the following dates: (a) December 31, 2006, (b) the effective date of any Capital Event during the Second Half, (c) the date during the First Half on which the Participant's employment with Nellson is terminated by Nellson for any reason other than a Termination For Cause, (c) the date during the Second Half on which the Participant's employment with Nellson is terminated in a Constructive Termination, and (d) the Chapter 11 Plan Effective Date.

"Termination For Cause" means termination of a Participant upon a good faith determination by the Chief Executive Officer or Chief Financial Officer of Nellson (or the board of directors in the case of the CEO or CFO), as applicable, with respect to any Participant that any one or more of the following has occurred:

(a)     The Participant shall have committed an act of fraud, embezzlement, misappropriation or breach of fiduciary duty against Nellson;

(b)     The Participant shall have been convicted by a court of competent jurisdiction of, or pleaded guilty or nolo contendere to, any felony or any crime involving moral turpitude;

(c)     The Participant shall have committed a breach of any confidentiality or non-compete obligation imposed by law or by covenants contained in any written employment or confidentiality agreement between Participant and Nellson;

(d)     The Participant shall have willfully failed to perform his duties on a regular basis and such willful failure shall have continued for a period of ten (10) calendar days after written notice to the Participant specifying such willful failure in reasonable detail;

LA: 152124.3

4

       (e)     The Participant shall have refused, after explicit written notice, to obey any lawful directive or resolution by the Chief Executive Officer or Chief Financial Officer of Nellson (or the board of directors in the case of the CEO or CFO) that is consistent with such Participant's duties to Nellson;

       (f)     The Participant shall have committed either (i) acts of gross misconduct or (ii) acts constituting grounds for immediate dismissal pursuant to the effective employee handbook of Nellson or other written policies of Nellson; or

       (g)     The Participant shall have engaged in the unlawful use or possession of illegal drugs on the premises of Nellson.

    2.     <u>First Half Incentive Bonus.</u>

       (a)     On the terms and conditions of this Plan, Nellson hereby grants and awards a First Half Incentive Bonus to each of the Participants.

       (b)     No Participant shall be entitled to a First Half Incentive Bonus under this Plan unless and until such Participant's right to such First Half Incentive Bonus has vested under this Plan.

       (c)     Subject to Section 2(d) and 2(e) hereof, a Participant's right to a First Half Incentive Bonus under this Plan shall vest on the First Half Vesting Date, if and only if both of the following conditions are met (i) Participant has remained regularly employed by Nellson from the date hereof through the First Half Vesting Date and (ii) actual EBITDA for the First Half, determined in accordance with Section 2(e), is fifty percent (50%) or more of Budgeted EBITDA for the First Half.

       (d)     A Participant's First Half Incentive Bonus shall be in the amount set forth opposite such Participant's name under the heading "First Half Incentive Bonus" on Exhibit "A" hereto, which amount shall be subject to adjustment in accordance with this paragraph. If actual EBITDA for the First Half is less than one hundred percent (100%) of Budgeted EBITDA for the First Half, a Participant's First Half Incentive Bonus shall be reduced as follows: (i) if such actual EBITDA is seventy-five percent (75%) or more of such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA and (ii) if such actual EBITDA is less than seventy-five percent (75%) of such Budgeted EBITDA, by seventy-five percent (75%).

       (e)     Promptly after the end of the First Half, Nellson will close its accounting books and records for such period, prepare internal unaudited financial statements for such period in accordance with its post practices, and deliver such financial statements to the Committee and to UBS AG, Stamford Branch, as administrative agent and collateral agent for the Existing Secured Debt. A First Half Incentive Bonus that has vested under this Plan shall become due and payable, and

5

APPELLEES' APPENDIX
PAGE 024

Nellson shall pay such First Half Incentive Bonus, after the third (3rd) business day after such delivery.

      3.      <u>Second Half Incentive Bonus</u>.

         (a)      On the terms and conditions of this Plan, Nellson hereby grants and awards a Second Half Incentive Bonus to each of the Participants.

         (b)      No Participant shall be entitled to a Second Half Incentive Bonus under this Plan unless and until such Participant's right to such Second Half Incentive Bonus has vested under this Plan.

         (c)      Subject to Section 3(d) and 3(e) hereof, a Participant's right to a Second Half Incentive Bonus under this Plan shall vest on the Second Half Vesting Date, if and only if both of the following conditions are met: (i) Participant has remained regularly employed by Nellson from the date hereof through the Second Half Vesting Date and (ii) EBITDA for the Second Half, determined in accordance with Section 3(e), is fifty percent (50%) or more of Budgeted EBITDA for the Second Half.

         (d)      A Participant's Second Half Incentive Bonus shall be in the amount set forth opposite such Participant's name under the heading "Second Half Incentive Bonus" on Exhibit "A" hereto, which amount shall be subject to adjustment in accordance with this paragraph. If actual EBITDA for the Second Half is less than one hundred percent (100%) of Budgeted EBITDA for the Second Half, a Participant's Second Half Incentive Bonus shall be reduced as follows: (i) if such actual EBITDA is seventy-five percent (75%) or more of such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA and (ii) if such actual EBITDA is less than seventy-five percent (75%) of such Budgeted EBITDA, by seventy-five percent (75%).

         (e)      Promptly after the end of the Second Half, Nellson will close its accounting books and records for such period, prepare internal unaudited financial statements for such period in accordance with past practices, and deliver such financial statements to the Committee and to UBS AG, Stamford Branch, as administrative agent and collateral agent for the Existing Secured Debt. A Second Half Incentive Bonus that has vested under this Plan shall become due and payable, and Nellson shall pay such Second Half Incentive Bonus, after the third (3rd) business day after such delivery.

      4.      <u>Effectiveness</u>. This Plan shall become effective upon its approval by the Bankruptcy Court. If this Plan does not become effective on or before May ___, 2006, it shall be deemed to have been terminated by Nellson and shall have no further force or effect.

      5.      <u>Prior KERP</u>. By participating herein, each Participant agrees that he or she hereby waives and releases, effective upon receipt of any Plan Payment, any and all claims against Nellson arising under the Key Employee Retention Plan adopted by Nellson in January 2006. If Participant does not receive any Plan Payment to which he or she is entitled under the

LA: 152124.3

6

Plan on or before the completion of such Plan, such waiver and release shall be void and of no force or effect, and in such case Participant shall retain all rights to such claims.

6.    Construction.  This Plan shall be governed by and construed in accordance with the laws of the State of California.  Expressions such as "hereof," "herein," and "hereto" refer to this Plan, as amended from time to time, and all exhibits or schedules attached hereto.  Unless otherwise stated in this Plan, "including" shall mean "including without limitation." Wherever the context so requires, the masculine shall include the feminine and neuter and the singular shall include the plural.  The captions and headings of the articles, sections and paragraphs of this Plan are inserted solely for convenience of reference and are not a part of, and are not intended to govern, limit or aid in the construction or interpretation of any term or provision herein.  Unless otherwise specified in this Plan, references to articles or sections refer to the articles and sections of this Plan.

7.    Understanding.  The Participants acknowledge that they have carefully read this Plan, that they have had sufficient time and opportunity to consider its terms and to obtain legal advice, if desired, that they fully understand its final and binding effect, that the only promises made to such Participants are those stated above, and that they are signing and agreeing to the terms of this Plan voluntarily.

8.    Plan Payments.  Any Plan Payments under this Plan shall be treated as cash compensation by Nellson to the Participant and shall be subject to all required or customary withholding in order to permit Nellson to comply with applicable law, including, without limitation, the employer's portion of any social security or other tax.

9.    Amendments.  This Plan may be amended from time to time with respect to any Participant only by written instrument executed by Nellson and the Participant.

10.    Assignment.  By virtue of the unique relationships and responsibilities involved in the services provided by the Participants, the rights and obligations of the Participants are not transferable or delegable and no Participant shall transfer any right, title or interest in this Plan, nor shall any such right, title or interest be subject to garnishment, attachment, lien, levy or execution or be subject to transfer by operation of law.  This Plan shall bind and inure to the benefit of Nellson and the Participants and each of their respective successors, assigns, personal representatives, heirs and legatees.  Each person executing this Plan and/or all amendments or supplements to it binds and obligates himself/herself, his/her present spouse, his/her estate, and all persons claiming by, through or under him/her.

11.    Attorneys' Fees.  Except as otherwise provided herein, in the event of arbitration or litigation concerning any provision of this Plan or the rights and duties of any person in relation thereto, reasonable attorneys' fees shall be paid to the prevailing party.

12.    Severability.   If any term, provision, covenant or condition of this Plan is held by a court of competent jurisdiction to be invalid, void or unenforceable, the rest of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

LA: 152124.3

7

13.    <u>Entire Plan</u>.  This Plan constitutes the entire Management Incentive Plan promulgated by Nellson for the benefit of the Participants.  Except as provided for in this Plan, there are no representations, plans, arrangements, or understandings, oral or written, between or among Nellson and any of the Participants relating to the subject matter hereof that are not fully expressed herein.

14.    <u>Waiver</u>.  No waiver of any of the provisions of this Plan shall be deemed a waiver of the right of any Party hereto to enforce strict compliance with the provisions hereof in any subsequent instance.

APPELLEES' APPENDIX
PAGE 027

IN WITNESS WHEREOF, the parties hereto have duly executed this Plan as of the Effective Date.

**NELLSON NUTRACEUTICAL, INC.:**

By: _____

Title: _____

**NELLSON NUTRACEUTICAL POWDER DIVISION, INC.:**

By: _____

Title: _____

**NELLSON NORTHERN OPERATING, INC.:**

By: _____

Title: _____

**NELLSON HOLDINGS, INC.:**

By: _____

Title: _____

**NELLSON INTERMEDIATE HOLDINGS, INC.:**

By: _____

Title: _____

**[SIGNATURE PAGE TO NELLSON MANAGEMENT INCENTIVE PLAN]**

LA: 152124.3

9

**NELLSON NUTRACEUTICAL EASTERN DIVISION, INC.:**

By:    _____

Title:    _____


**VITEX FOODS, INC.:**

By:    _____

Title:    _____


[SIGNATURE PAGE TO NELLSON MANAGEMENT INCENTIVE PLAN]

LA: 152124.3

10

APPELLEES' APPENDIX
PAGE 029

# Exhibit A to
# Management Incentive Plan

**Intentionally Not Included**

APPELLEES' APPENDIX
PAGE 030

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## ORDER AUTHORIZING AND APPROVING PAYMENTS
## UNDER MANAGEMENT INCENTIVE PLAN

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (the "Debtors") for entry of an order authorizing and approving the Management

Incentive Plan; and this Court having jurisdiction over the matters set forth in the Motion; and

finding that notice of the Motion was appropriate, and that no further notice is needed; and upon

the record established at the hearing on the Motion; and finding that good and sufficient cause

exists to grant the relief set forth in the Motion; accordingly, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that the Debtors are authorized to implement the Management

Incentive Plan; and it is further

ORDERED, that the Debtors are authorized, but not directed, to make payments

to the Employees, under the Management Incentive Plan, up to an aggregate amount of $1.395

million; and it is further

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows:
(a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware
corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id.
#0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical
Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc.,
a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.
[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion,

APPELLEES' APPENDIX
PAGE 031

ORDERED, that all payments under the Management Incentive Plan shall be deemed allowed administrative expenses of the Debtors' estates under section 503(b) of the Bankruptcy Code; and it is further

ORDERED, that this Court shall retain jurisdiction over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the Management Incentive Plan.

Dated:  May _____, 2006

_____
Christopher S. Sontchi
United States Bankruptcy Judge

APPELLEES' APPENDIX
PAGE 032

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

### AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss.: |
| COUNTY OF NEW CASTLE | ) |

Rasheda Stewart, being duly sworn according to law, deposes and says that she is employed by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP, counsel for the Debtors and Debtors in Possession, in the above-captioned action, and that on the 28th day of April 2006, she caused a true and correct copy of the following document(s) to be served upon the attached service list(s) in the manner indicated:

**1.    NOTICE OF MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING PAYMENTS UNDER MANAGEMENT INCENTIVE PLAN;**

**2.    MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING PAYMENTS UNDER MANAGEMENT INCENTIVE PLAN; and**

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc., a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.

59903-001\DOCS_DE:114985.8

3.    **[PROPOSED] ORDER.**

_Rasheda Stewart_

Sworn to and subscribed before
me this 28th day of April 2006

Notary Public
My Commission Expires:  8·26·07

MARLENE S. CHAPPE
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Aug. 26, 2007

Nellson Nutraceutical, Inc. 2002 Service List
Case No. 06-10072 (CSS)
Document No. 114109
10 – Hand Delivery
02 – Interoffice Delivery
31 – First Class Mail

(Counsel to the Debtors)
Laura Davis Jones, Esquire
Rachel Lowy Werkheiser, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Interoffice Mail**
(Counsel to the Debtors)
Debra Grassgreen, Esquire
Maxim B. Litvak, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
150 California Street, 15th Floor
San Francisco, CA  94111

**Interoffice Mail**
(Counsel to the Debtors)
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA  90067

**Hand Delivery**
(Copy Service)
Parcels, Inc.
Vito I. DiMaio
4 East Seventh Street
Wilmington, DE  19801

**Hand Delivery**
(United States Trustee)
William Harrington, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Fremont Investors VII, LLC)
Mark D. Collins, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Wells Fargo Bank, N.A. and Wells Fargo
Brokerage Services, LLC)
Richard Cobb, Esquire
Jamie L. Edmonson, Esquire
Landis, Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Westaff (USA) and Pride Transport, Inc.,
Erie Foods, Inc.)
James E. Huggett, Esquire
Jackson Shrum, Esquire
Ron L. Woodman, Esquire
Harvey Pennington Ltd.
913 North Market Street, Suite 702
Wilmington, DE  19801

**Hand Delivery**
(Counsel to UBS)
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the Official Committee of Unsecured
Creditors)
Kurt F. Gwynne, Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Orafti, American Honey and Kerry, Inc.)
Mark E. Felger, Esquire
Cozen O'Connor
Chase Manhattan Centre
1201 North Market Street Suite 1400
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Dell Marketing, L.P.)
Patricia P. McGonigle, Esquire
Seitz, Vanogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
PO Box 68
Wilmington, DE  19899

**Hand Delivery**
(Counsel to Informal Committee of First Lien Lenders)
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Utah Paperbox Company)
Neil B. Glassman, Esquire
Daniel K. Astin, Esquire
Ashley B. Stitzer, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

**Hand Delivery**
(Counsel to The Solae Company)
Jennifer A.L. Kelleher, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 N. Market Street, 12th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to The Blommer Chocolate Company)
Norman M. Monhait, Esquire
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
Wilmington, DE  19801

**First Class Mail**
(Counsel to UBS)
James J. Holman , Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA

**First Class Mail**
(Counsel to UBS)
Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA  90017

**First Class Mail**
(Counsel to Fremont Investors VII, LLC)
Suzzanne Uhland, Esquire
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111-3305

**First Class Mail**
(Counsel to Wells Fargo Bank, N.A. and Well Fargo Brokerage Services, LLC)
Maria K. Pum, Esquire
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA  90071

**First Class Mail**
(Counsel to the Ad Hoc Committee of First Lien Lenders)
Fred Hodara, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY  10022-2524

**First Class Mail**
(Counsel to Wells Fargo Bank, N.A. and Well Fargo Brokerage Services, LLC)
Daniel P. Ginsberg, Esquire
White & Case LLP
1155 Avenue of the Americas
New York, NY  10036-2787

**First Class Mail**
(Wells Fargo Bank, N.A. and Well Fargo Brokerage Services, LLC)
Ms. Ellen Trach
Wells Fargo Bank, N.A.
MAC N9305-198
90 South 7th Street
Minneapolis, MN  55479

**First Class Mail**
(Counsel to Erie Foods International, Inc.)
Dale G. Haake, Esquire
Katz, Huntoon & Fieweger, P.C.
1000 36th Avenue
Moline, IL 61265

**First Class Mail**
(Counsel to Experimental and Applied Sciences, Inc.
a/k/a EAS, Inc.)
Samuel C. Wisotzkey, Esquire
Kohner, Mann & Kailas, S.C.
Washington Building
Barnabas Business Center
4650 North Port Washington Road
Milwaukee, WI 53212-1059

**First Class Mail**
(Counsel to the Official Committee of Unsecured
Creditors)
Claudia Springer, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

**First Class Mail**
(Counsel to Ryco Packaging Corporation)
Steven J. Woolley, Esquire
Marks Clare & Richards, LLC
11605 Miracle Hills Drive., Suite 300
Omaha, NE 542005

**First Class Mail**
(Quadrangle Debt Recovery Advisors LLC)
Stacey Harris
Andrew Herenstein
375 Park Avenue, 14th Floor
New York, NY 10152

**First Class Mail**
(Counsel to Farbest-Tallman Foods Corp.)
Stephen V. Falanga, Esquire
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068-9500

**First Class Mail**
(Counsel to Clasen Quality Coatings, Inc.)
Thomas J. O'Brien, Esquire
Peter C. Blain, Esquire
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 2100
Milwaukee, WI 53202-3186

**First Class Mail**
(Counsel to Dell Marketing, L.P.)
Sabrina L. Streusand, Esquire
G. James Landon, Esquire
Hughes & Luce, LLP
111 Congress Avenue, Suite 900
Austin, TX 78701

**First Class Mail**
(Counsel to CGU Capital Group, LLC)
Andrew A. Goodman, Esquire
Greenberg & Bass LLP
16000 Ventura Blvd., Suite 1000
Encino, CA 91436

**First Class Mail**
(CGU Capital Group, LLC)
B. Dale Ulman
CGU Capital Group, LLC
PO Box 2573
Palos Verdes Peninsula, CA 90274

**First Class Mail**
(Counsel to Informal Committee of First Lien Lenders)
Scott L. Alberino, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036

**First Class Mail**
(Informal Committee of First Lien Lenders)
Steve Landzberg
Paul Lukaszewski
Roderick Bryce
Barclays Bank PLC
200 Park Avenue
New York, NY 10166

**First Class Mail**
(Informal Committee of First Lien Lenders)
Michelle Patterson
Cypresstree Investment Management Company, Inc.
1 Boston Place, 16th Floor
Boston, MA 02108

**First Class Mail**
(Informal Committee of First Lien Lenders)
Kamilah Boyd
General Electric Capital Corporation
Bank Loan Group
201 Merritt 7
PO Box 5201
Norwalk, CT 06856

**First Class Mail**
(Counsel to McCormick & Company)
Daniel J. Carrigan, Esquire
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, N.W., Suite 800
Washington, DC 20036

**First Class Mail**
(McCormick & Company)
Mr. Austin Nooney
McCormick & Company, Inc.
211 Schilling Circle
Hunt Valley, MD 21031

**First Class Mail**
(Fee Auditor)
Warren H. Smith, Esquire
Warren H. Smith & Associates, P.C.
Republic Center
325 North St. Paul, Suite 4080
Dallas, TX 75201

**First Class Mail**
(Counsel to Barry Callebaut USA Inc)
Paula K. Tucker, Esquire
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201

**First Class Mail**
Counsel to The Blommer Chocolate Company)
David W. Wirt, Esquire
Courtney Engelbrecht Barr, Esquire
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

**First Class Mail**
(Counsel to Conopco, Inc.)
Andrew C. Gold, Esquire
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016

**First Class Mail**
(Counsel to NBTY Successor in Interest to Vitamin
World, Inc. and Rexall Sundown, Inc.)
Lisa M. Golden, Esquire
Craig M. Johnson, Esquire
Jaspan Schlesinger Hoffman, LLP
300 Garden City Plaza
Garden City, NY 11530

**First Class Mail**
(Counsel to The Solae Company)
Vincent J. Marriott, III, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

**First Class Mail**
(St. Paul Travelers)
Beth Dibiaso-Francis
Account Resolution
St. Paul Travelers
National Accounts
1 Tower Square – 5MN
Hartford, CT 06183-4044

**First Class Mail**
(Counsel to All Packaging Company, Inc.)
Lawrence Bass, Esquire
Holme Roberts & Owen LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203

**First Class Mail**
(Con-way Transportation Services, Inc.)
Susan de la Cruz
CWY Credit
Bankruptcy Department
Con-Way Transportation Services, Inc.
5555 Ruff Snow Dr., Suite 5515
North Richland Hills, TX 76180

# A-2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Related Docket No. 334** |

## ORDER AUTHORIZING AND APPROVING PAYMENTS
## UNDER MANAGEMENT INCENTIVE PLAN

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (the "Debtors") for entry of an order authorizing and approving the Management

Incentive Plan; and this Court having jurisdiction over the matters set forth in the Motion; and

finding that notice of the Motion was appropriate, and that no further notice is needed; and upon

the record established at the hearing on the Motion; and finding that good and sufficient cause

exists to grant the relief set forth in the Motion; accordingly, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that the Debtors are authorized to implement the Management

Incentive Plan, substantially in the form attached hereto as Exhibit A; and it is further

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows:
(a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware
corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id.
#0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical
Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc.,
a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.
[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

DOCKET # 482
TE 7\18\06

APPELLEES' APPENDIX
PAGE 039

ORDERED, that the Debtors are authorized, but not directed, to make payments to the Employees, under the Management Incentive Plan, up to an aggregate amount of $1.395 million; and it is further

ORDERED, that all payments under the Management Incentive Plan shall be deemed allowed administrative expenses of the Debtors' estates under section 503(b) of the Bankruptcy Code; and it is further

ORDERED, that this Court shall retain jurisdiction over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the Management Incentive Plan.

Dated: July _18_, 2006

_Christopher Sontchi_
Christopher S. Sontchi
United States Bankruptcy Judge

APPELLEES' APPENDIX
PAGE 040

# EXHIBIT A

APPELLEES' APPENDIX
PAGE 041

## Management Incentive Plan

This Management Incentive Plan (this "Plan") of Nellson Nutraceutical, Inc. and the subsidiaries listed on the signature page hereto (collectively, "Nellson"), dated as of July __ , 2006, is adopted for the benefit of the Participants (as hereinafter defined).

### Recitals

Nellson hereby acknowledges as follows:

A.    Nellson is engaged in the manufacturing of nutritional food bars and powders for weight loss, sports training and wellness and medical categories (the "Business").

B.    Nellson is debtor and debtor in possession in Case No. 06-10072 (CSS) (the "Case") before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in proceedings under Chapter 11 of the Bankruptcy Code.

C.    In the Case, Nellson is pursuing a restructuring of its debt and equity structure (the "Restructuring") to maximize the value of the Business for all constituents.

D.    Nellson believes that the successful accomplishment of the Restructuring depends, among other factors, on Nellson's ability to manage the Business in accordance with its budget.

E.    Nellson believes that the Participants are critical to the successful management of the Business in accordance with its budget, and that an incentive plan is both necessary and appropriate to encourage the Participants to devote their full time, attention, energy and effort to such management.

F.    Nellson wishes to clearly set forth the terms and conditions of such incentive plan.

### Terms and Conditions

Nellson hereby agrees as follows:

1.    Definitions. For purposes of this Plan, the following terms shall have the following meanings:

"Bankruptcy Court" has the meaning given to such term in the recitals to this Plan.

"Budget" means Nellson's Budget for fiscal year 2006 as previously delivered to the Committee and to UBS AG, Stanford Branch, as administrative agent and collateral agent for the Existing Senior Debt.

LA: 152124.3

1

APPELLEES' APPENDIX
PAGE 042

"Budgeted EBITDA" means EBITDA as projected in the Budget, before professional fees, Incentive Bonuses under this Plan and other costs incurred by Nellson in connection with the Restructuring and the Case.

"Case" has the meaning give to such term in the recitals to this Plan.

"Chapter 11 Plan Effective Date" means the date on which a Chapter 11 plan of reorganization in the Case become effective.

"Committee" means the Official Committee of Unsecured Creditors in the Case.

"Constructive Termination" means the occurrence of any of the following : (i) any actual or implied threat of discharge of Participant by Nellson under circumstances which would not constitute a Termination For Cause and which results in an involuntary resignation of employment by Participant, (ii) any act(s) by Nellson which are designed to or have the effect of rendering Participant's working conditions so intolerable or demeaning on a recurring basis that a reasonable person would resign such employment, which act(s) result in the involuntary resignation of employment by the Participant, (iii) a material adverse alteration in Participant's reporting relationships, position, responsibilities, title or status, which results in the involuntary resignation of employment by Participant; (iv) a material reduction in Participant's compensation or a substantial reduction in benefits provided to Participant that are provided for or referenced hereunder; (v) any material change in any benefit, retirement, or deferred compensation plan or arrangement made available to Participant which is adverse to Participant; or (vi) any actual or proposed relocation of Participant to a location that is more than 35 miles from the location of Participant's current employment for Nellson as of the Effective Date, which actual or proposed relocation causes the Participant to resign from his or her employment.

"EBITDA" means the earnings before interest, taxes, depreciation and amortization of Nellson, before professional fees and other costs incurred by Nellson in connection with the Restructuring and the Case and as determined by Nellson reasonably, in good faith, and in a manner consistent with Budgeted EBITDA.

"Effective Date" shall be the date on which this Plan is approved by the Bankruptcy Court.

"Existing Secured Debt" means any and all obligations of Nellson arising under that certain Amended and Restated Credit Agreement, dated as of July 3, 2003, and that certain Second Lien Credit Agreement, dated as of February 11, 2004, as such agreements may have been amended, supplemented or modified.

"First Half" means the two fiscal quarters ending July 2, 2006.

"First Half Incentive Bonus" means, with respect to a Participant, the dollar amount set forth opposite such Participant's name under the heading "First Half Incentive Bonus" on Exhibit "A" hereto, subject to adjustment under Section 2(d) hereof. To the extent that any individuals in addition to those listed on "Exhibit A" are designated as Participants in

LA: 152124.3

2

the discretion of Nellson, the First Half Incentive Bonus payable to such Participants shall not exceed $100,000 in the aggregate, as reflected on the "Emergency Contingency" line item on Exhibit "A."

"First Half Vesting Date" means, with respect to the First Half Incentive Bonus of any Participant, the first to occur of the following dates: (a) July 2, 2006, (b) the date during the First Half on which the Participant's employment with Nellson is terminated by Nellson for any reason other than a Termination For Cause, (c) the date during the First Half on which the Participant's employment with Nellson is terminated in a Constructive Termination, and (d) the Chapter 11 Plan Effective Date.

"Nellson" has the meaning given such term in the introductory paragraph of this Plan.

"Participant" means those individuals listed on Exhibit "A" hereto, plus any additional individuals that may be designated as Participants in the discretion of Nellson.

"Plan Payments" means the payments contemplated by this Plan.

"Restructuring" has the meaning given to such term in the recitals to this Plan.

"Second Half" means the two fiscal quarters ending December 31, 2006.

"Second Half Incentive Bonus" means, with respect to a Participant, the dollar amount set forth opposite such Participant's name under the heading "Second Half Incentive Bonus" on Exhibit "A" hereto, as adjusted by Section 3(d) hereof. To the extent that any individuals in addition to those listed on "Exhibit A" are designated as Participants in the discretion of Nellson, the Second Half Incentive Bonus payable to such Participants shall not exceed $100,000 in the aggregate, as reflected on the "Emergency Contingency" line item on Exhibit "A."

"Second Half Vesting Date" means, with respect to the Second Half Incentive Bonus of any Participant, the first to occur of the following dates: (a) December 31, 2006, (b) the date during the First Half on which the Participant's employment with Nellson is terminated by Nellson for any reason other than a Termination For Cause, (c) the date during the Second Half on which the Participant's employment with Nellson is terminated in a Constructive Termination, and (d) the Chapter 11 Plan Effective Date.

"Termination For Cause" means termination of a Participant upon a good faith determination by the Chief Executive Officer or Chief Financial Officer of Nellson (or the board of directors in the case of the CEO or CFO), as applicable, with respect to any Participant that any one or more of the following has occurred:

(a) The Participant shall have committed an act of fraud, embezzlement, misappropriation or breach of fiduciary duty against Nellson;

APPELLEES' APPENDIX
PAGE 044

(b)     The Participant shall have been convicted by a court of competent jurisdiction of, or pleaded guilty or nolo contendere to, any felony or any crime involving moral turpitude;

(c)     The Participant shall have committed a breach of any confidentiality or non-compete obligation imposed by law or by covenants contained in any written employment or confidentiality agreement between Participant and Nellson;

(d)     The Participant shall have willfully failed to perform his duties on a regular basis and such willful failure shall have continued for a period of ten (10) calendar days after written notice to the Participant specifying such willful failure in reasonable detail;

(e)     The Participant shall have refused, after explicit written notice, to obey any lawful directive or resolution by the Chief Executive Officer or Chief Financial Officer of Nellson (or the board of directors in the case of the CEO or CFO) that is consistent with such Participant's duties to Nellson;

(f)     The Participant shall have committed either (i) acts of gross misconduct or (ii) acts constituting grounds for immediate dismissal pursuant to the effective employee handbook of Nellson or other written policies of Nellson; or

(g)     The Participant shall have engaged in the unlawful use or possession of illegal drugs on the premises of Nellson.

2.     First Half Incentive Bonus.

(a)     On the terms and conditions of this Plan, Nellson hereby grants and awards a First Half Incentive Bonus to each of the Participants.

(b)     No Participant shall be entitled to a First Half Incentive Bonus under this Plan unless and until such Participant's right to such First Half Incentive Bonus has vested under this Plan.

(c)     Subject to Section 2(d) and 2(e) hereof, a Participant's right to a First Half Incentive Bonus under this Plan shall vest on the First Half Vesting Date, if and only if both of the following conditions are met (i) Participant has remained regularly employed by Nellson from the date hereof through the First Half Vesting Date and (ii) actual EBITDA for the First Half, determined in accordance with Section 2(e), is seventy-five percent (75%) or more of Budgeted EBITDA for the First Half.

(d)     A Participant's First Half Incentive Bonus shall be in the amount set forth opposite such Participant's name under the heading "First Half Incentive Bonus" on Exhibit "A" hereto, which amount shall be subject to adjustment in accordance with this paragraph. If actual EBITDA for the First Half is less than one hundred percent (100%) of Budgeted EBITDA for the First Half, a Participant's First Half Incentive

4

APPELLEES' APPENDIX
PAGE 045

Bonus shall be reduced as follows: if such actual EBITDA is seventy-five percent (75%) or more of such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA.

(e)     Promptly after the end of the First Half, Nellson will close its accounting books and records for such period, prepare internal unaudited financial statements for such period in accordance with its post practices, and deliver such financial statements to the Committee and to UBS AG, Stamford Branch, as administrative agent and collateral agent for the Existing Secured Debt. A First Half Incentive Bonus that has vested under this Plan shall become due and payable, and Nellson shall pay such First Half Incentive Bonus, after the third (3rd) business day after such delivery.

3.     Second Half Incentive Bonus.

(a)     On the terms and conditions of this Plan, Nellson hereby grants and awards a Second Half Incentive Bonus to each of the Participants.

(b)     No Participant shall be entitled to a Second Half Incentive Bonus under this Plan unless and until such Participant's right to such Second Half Incentive Bonus has vested under this Plan.

(c)     Subject to Section 3(d) and 3(e) hereof, a Participant's right to a Second Half Incentive Bonus under this Plan shall vest on the Second Half Vesting Date, if and only if both of the following conditions are met: (i) Participant has remained regularly employed by Nellson from the date hereof through the Second Half Vesting Date and (ii) EBITDA for the Second Half, determined in accordance with Section 3(e), is seventy-five percent (75%) or more of Budgeted EBITDA for the Second Half.

(d)     A Participant's Second Half Incentive Bonus shall be in the amount set forth opposite such Participant's name under the heading "Second Half Incentive Bonus" on Exhibit "A" hereto, which amount shall be subject to adjustment in accordance with this paragraph. If actual EBITDA for the Second Half is less than one hundred percent (100%) of Budgeted EBITDA for the Second Half, a Participant's Second Half Incentive Bonus shall be reduced as follows: if such actual EBITDA is seventy-five percent (75%) or more of such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA.

(e)     Promptly after the end of the Second Half, Nellson will close its accounting books and records for such period, prepare internal unaudited financial statements for such period in accordance with past practices, and deliver such financial statements to the Committee and to UBS AG, Stamford Branch, as administrative agent and collateral agent for the Existing Secured Debt. A Second Half Incentive Bonus that has vested under this Plan shall become due and payable, and Nellson shall pay such Second Half Incentive Bonus, after the third (3rd) business day after such delivery.

APPELLEES' APPENDIX
PAGE 046

4.   Effectiveness. This Plan shall become effective upon its approval by the Bankruptcy Court. If this Plan does not become effective on or before July ___, 2006, it shall be deemed to have been terminated by Nellson and shall have no further force or effect.

5.   Prior KERP. By participating herein, each Participant agrees that he or she hereby waives and releases, effective upon receipt of any Plan Payment, any and all claims against Nellson arising under the Key Employee Retention Plan adopted by Nellson in January 2006. If Participant does not receive any Plan Payment to which he or she is entitled under the Plan on or before the completion of such Plan, such waiver and release shall be void and of no force or effect, and in such case Participant shall retain all rights to such claims.

6.   Construction. This Plan shall be governed by and construed in accordance with the laws of the State of California. Expressions such as "hereof," "herein," and "hereto" refer to this Plan, as amended from time to time, and all exhibits or schedules attached hereto. Unless otherwise stated in this Plan, "including" shall mean "including without limitation." Wherever the context so requires, the masculine shall include the feminine and neuter and the singular shall include the plural. The captions and headings of the articles, sections and paragraphs of this Plan are inserted solely for convenience of reference and are not a part of, and are not intended to govern, limit or aid in the construction or interpretation of any term or provision herein. Unless otherwise specified in this Plan, references to articles or sections refer to the articles and sections of this Plan.

7.   Understanding. The Participants acknowledge that they have carefully read this Plan, that they have had sufficient time and opportunity to consider its terms and to obtain legal advice, if desired, that they fully understand its final and binding effect, that the only promises made to such Participants are those stated above, and that they are signing and agreeing to the terms of this Plan voluntarily.

8.   Plan Payments. Any Plan Payments under this Plan shall be treated as cash compensation by Nellson to the Participant and shall be subject to all required or customary withholding in order to permit Nellson to comply with applicable law, including, without limitation, the employer's portion of any social security or other tax.

9.   Amendments. This Plan may be amended from time to time with respect to any Participant only by written instrument executed by Nellson and the Participant.

10.   Assignment. By virtue of the unique relationships and responsibilities involved in the services provided by the Participants, the rights and obligations of the Participants are not transferable or delegable and no Participant shall transfer any right, title or interest in this Plan, nor shall any such right, title or interest be subject to garnishment, attachment, lien, levy or execution or be subject to transfer by operation of law. This Plan shall bind and inure to the benefit of Nellson and the Participants and each of their respective successors, assigns, personal representatives, heirs and legatees. Each person executing this Plan and/or all amendments or supplements to it binds and obligates himself/herself, his/her present spouse, his/her estate, and all persons claiming by, through or under him/her.

11.    Attorneys' Fees. Except as otherwise provided herein, in the event of arbitration or litigation concerning any provision of this Plan or the rights and duties of any person in relation thereto, reasonable attorneys' fees shall be paid to the prevailing party.

12.    Severability.    If any term, provision, covenant or condition of this Plan is held by a court of competent jurisdiction to be invalid, void or unenforceable, the rest of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

13.    Entire Plan. This Plan constitutes the entire Management Incentive Plan promulgated by Nellson for the benefit of the Participants. Except as provided for in this Plan, there are no representations, plans, arrangements, or understandings, oral or written, between or among Nellson and any of the Participants relating to the subject matter hereof that are not fully expressed herein.

14.    Waiver. No waiver of any of the provisions of this Plan shall be deemed a waiver of the right of any Party hereto to enforce strict compliance with the provisions hereof in any subsequent instance.

APPELLEES' APPENDIX
PAGE 048

IN WITNESS WHEREOF, the parties hereto have duly executed this Plan as of the Effective Date.

**NELLSON NUTRACEUTICAL, INC.:**

By: _____

Title: _____

**NELLSON NUTRACEUTICAL POWDER DIVISION, INC.:**

By: _____

Title: _____

**NELLSON NORTHERN OPERATING, INC.:**

By: _____

Title: _____

**NELLSON HOLDINGS, INC.:**

By: _____

Title: _____

**NELLSON INTERMEDIATE HOLDINGS, INC.:**

By: _____

Title: _____

**[SIGNATURE PAGE TO NELLSON MANAGEMENT INCENTIVE PLAN]**

LA: 152124.3

8

APPELLEES' APPENDIX
PAGE 049

**NELLSON NUTRACEUTICAL EASTERN DIVISION, INC.:**

By: _____

Title: _____

**VITEX FOODS, INC.:**

By: _____

Title: _____

**[SIGNATURE PAGE TO NELLSON MANAGEMENT INCENTIVE PLAN]**

APPELLEES' APPENDIX
PAGE 050

# Exhibit A
# to the Management
# Incentive Plan

Intentionally Not Included

APPELLEES' APPENDIX
PAGE 051

# A-3

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
| *In re* | : | Chapter 11 |
|  | : |  |
| NELLSON NUTRACEUTICAL, | : |  |
| INC., *et al.*, | : |  |
|  | : | Case Number 06-10072 (CSS) |
| Debtors. | : | Jointly Administered |
|  | : |  |

## NOTICE OF APPEAL FROM ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING PAYMENTS UNDER MANAGEMENT INCENTIVE PLAN
## (RELATED TO DOCKET ENTRY NO. 482)

Kelly Beaudin Stapleton, United States Trustee for Region 3, by and through her counsel, appeals from this Court's July 18, 2006 order authorizing and approving payments under management incentive plan (the "Order") (Docket Entry No. 482). A copy of the Order is attached as Exhibit A.

The parties to the appeal and their counsel are listed below:

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

1

DOCKET # 512
DATE 7/27/06
APPELLEES' APPENDIX
PAGE 052

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE FOR REGION 3**

William K. Harrington, Esquire
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Phone: (302) 573-6491
Fax:     (302) 573-6497


**NELLSON NUTRACEUTICAL, INC.,** *et al.*
**DEBTORS IN POSSESSION**

Laura Davis Jones, Esquire
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Alan J. Kornfeld, Esquire
Rachel Lowy Werkheiser, Esquire
PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB LLP
919 Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax:     (302) 652-4400


**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Kurt F. Gwynne, Esquire
Claudia Z. Springer, Esquire
Thomas J. Francella, Jr., Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Phone: (302) 788-7500
Fax:     (302) 778-7575

2

**INFORMAL COMMITTEE OF FIRST LIEN LENDERS**

Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Phone: (302) 571-6690
Fax:     (302) 576-3283

      -and-

Fred Hodara, Esquire
Akin Gump Strauss Hauer & Fled LLP
590 Madison Avenue
New York, NY 10022-2524
Phone: (212) 872-8040
Fax:     (212) 872-1002


**UBS AG, STAMFORD BRANCH, AS ADMINISTRATIVE
AGENT UNDER THE PREPETITION CREDIT AGREEMENTS**

Richard W. Riley, Esquire
James J. Holman, Esquire
Duane Morris, LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Phone: (302) 657-4928
Fax:     (302) 657-4901

      -and-

Gregory A. Bray, Esquire
Thomas R. Kreller
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Phone: (302) 571-6690
Fax:     (302) 576-3283

APPELLEES' APPENDIX
PAGE 054

Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**


**BY:** /s/ William K. Harrington
    William K. Harrington, Esquire
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE  19801
    (302) 573-6491
    (302) 573-6497 (Fax)

Date:  July 27, 2006

APPELLEES' APPENDIX
PAGE 055

# A-4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
| In re: | : |  |
|  | : | Case No. 06-10072 (CSS) |
| NELLSON NUTRACEUTICAL, INC., *et al.*, | : | Jointly Administered |
|  | : |  |
| Debtors. | : | Re: Docket No. 482 |
|  | : |  |

### NOTICE OF APPEAL

The Official Committee of Unsecured Creditors, by and through its undersigned counsel,

appeals to the United States District Court for the District of Delaware under 28 U.S.C. § 158(a)

from the Order Authorizing and Approving Payments Under Management Incentive Program

dated July 18, 2006 (the "Order"). The Order was entered on the docket of the above-captioned

adversary case on July 18, 2006 as Docket Item No. 482 and is attached as Exhibit 1.

The names of all parties to the order appealed from and the names, addresses and

telephone numbers of their respective attorneys are as follows:

**Party:**    The Official Committee of Unsecured Creditors

Counsel:

Kurt F. Gwynne (No. 3951)
Thomas J. Francella, Jr. (No. 3835)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

Claudia Z. Springer, Esquire
REED SMITH LLP
One Liberty Place
Philadelphia, PA 19103
Telephone: (215) 241-7946
Facsimile: (215) 851-1420

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DOCKET # 518
ATE 7/28/06

**Party:**     UBS, AG, Stamford Branch, as Administrative Agent under the Prepetition Credit Agreements

<u>Counsel:</u>

Richard W. Riley, Esquire
James J. Holman, Esquire
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901

Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
MILBANK, TWEED, HADLEY
 & MCCLOY LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063


**Party:**     Nellson Nutraceutical, Inc., *et al.*, Debtors and Debtors in Possession

<u>Counsel:</u>

Laura Davis Jones, Esquire
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Alan J. Kornfeld, Esquire
Rachel Lowy Werkheiser, Esquire
PACHULSKI, STANG, ZIEHL, YOUNG,
 JONES & WEINTRAUB LLP
919 Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400


**Party:**     Informal Committee of First Lien Lenders

<u>Counsel:</u>

Robert S. Brady, Esquire
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6690
Facsimile: (302) 576-3283

Fred Hodara, Esquire
AKIN GUMP STRAUS HAUER
 & FELD LLP
590 Madison Avenue
New York, NY 10022-2524
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

**Party:**      Kelly Beaudin Stapleton, United States Trustee for Region 3

Counsel:

William K Harrington, Esquire
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Telephone: (302) 573-6491
Facsimile: (302) 573-6497


Dated: July 28, 2006              REED SMITH LLP
Wilmington, Delaware

                          By:   /s/ Kurt F. Gwynne
                                Kurt F. Gwynne (No. 3951)
                                Thomas J. Francella, Jr. (No. 3835)
                                1201 Market Street, Suite 1500
                                Wilmington, DE  19801
                                Telephone:  (302) 788-7500
                                Facsimile:  (302) 778-7575
                                E-mail:  kgwynne@reedsmith.com
                                         tfrancella@reedsmith.com

                                          and

                                Claudia Z. Springer, Esquire
                                2500 One Liberty Place
                                1650 Market Street
                                Philadelphia, PA 19103-7301
                                Telephone:  (215) 851-8100
                                Facsimile:  (215) 851-1420
                                E-mail:  cspringer@reedsmith.com

                                Counsel for Official Committee of Unsecured
                                Creditors

APPELLEES' APPENDIX
PAGE 058

# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| NELLSON NUTRACEUTICAL, INC.,[1] | ) | Case No. 06-10072 (CSS) |
|  | ) | (Jointly Administered) |
| Debtors. | ) | **Related Docket No. 334** |

## ORDER AUTHORIZING AND APPROVING PAYMENTS UNDER MANAGEMENT INCENTIVE PLAN

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order authorizing and approving the Management Incentive Plan; and this Court having jurisdiction over the matters set forth in the Motion; and finding that notice of the Motion was appropriate, and that no further notice is needed; and upon the record established at the hearing on the Motion; and finding that good and sufficient cause exists to grant the relief set forth in the Motion; accordingly, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that the Debtors are authorized to implement the Management Incentive Plan, substantially in the form attached hereto as Exhibit A; and it is further

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) Nellson Nutraceutical, Inc., a Delaware corporation, Fed. Tax Id. #5044; (b) Nellson Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0642; (c) Nellson Intermediate Holdings, Inc., a Delaware corporation, Fed. Tax Id. #0653; (d) Nellson Northern Operating, Inc., a Delaware corporation, Fed. Tax Id. #7694, (e) Nellson Nutraceutical Eastern Division, Inc., a Delaware corporation, Fed. Tax Id. #8503; (f) Nellson Nutraceutical Powder Division, Inc., a Delaware corporation, Fed. Tax Id. #3670; and (g) Vitex Foods, Inc., a California corporation, Fed. Tax Id. #9218.
[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion,

59903-001\DOCS_DE:119718.2

APPELLEES' APPENDIX
PAGE 060

ORDERED, that the Debtors are authorized, but not directed, to make payments to the Employees, under the Management Incentive Plan, up to an aggregate amount of $1.395 million; and it is further

ORDERED, that all payments under the Management Incentive Plan shall be deemed allowed administrative expenses of the Debtors' estates under section 503(b) of the Bankruptcy Code; and it is further

ORDERED, that this Court shall retain jurisdiction over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the Management Incentive Plan.

Dated: July 18 , 2006

Christopher S. Sontchi
United States Bankruptcy Judge

APPELLEES' APPENDIX
PAGE 061

# <u>EXHIBIT A</u>

APPELLEES' APPENDIX
PAGE 062

### Management Incentive Plan

This Management Incentive Plan (this "Plan") of Nellson Nutraceutical, Inc. and the subsidiaries listed on the signature page hereto (collectively, "Nellson"), dated as of July __ , 2006, is adopted for the benefit of the Participants (as hereinafter defined).

### Recitals

Nellson hereby acknowledges as follows:

A.     Nellson is engaged in the manufacturing of nutritional food bars and powders for weight loss, sports training and wellness and medical categories (the "Business").

B.     Nellson is debtor and debtor in possession in Case No. 06-10072 (CSS) (the "Case") before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in proceedings under Chapter 11 of the Bankruptcy Code.

C.     In the Case, Nellson is pursuing a restructuring of its debt and equity structure (the "Restructuring") to maximize the value of the Business for all constituents.

D.     Nellson believes that the successful accomplishment of the Restructuring depends, among other factors, on Nellson's ability to manage the Business in accordance with its budget.

E.     Nellson believes that the Participants are critical to the successful management of the Business in accordance with its budget, and that an incentive plan is both necessary and appropriate to encourage the Participants to devote their full time, attention, energy and effort to such management.

F.     Nellson wishes to clearly set forth the terms and conditions of such incentive plan.

### Terms and Conditions

Nellson hereby agrees as follows:

1.     Definitions.  For purposes of this Plan, the following terms shall have the following meanings:

"Bankruptcy Court" has the meaning given to such term in the recitals to this Plan.

"Budget" means Nellson's Budget for fiscal year 2006 as previously delivered to the Committee and to UBS AG, Stanford Branch, as administrative agent and collateral agent for the Existing Senior Debt.

1

APPELLEES' APPENDIX
PAGE 063

"Budgeted EBITDA" means EBITDA as projected in the Budget, before professional fees, Incentive Bonuses under this Plan and other costs incurred by Nellson in connection with the Restructuring and the Case.

"Case" has the meaning give to such term in the recitals to this Plan.

"Chapter 11 Plan Effective Date" means the date on which a Chapter 11 plan of reorganization in the Case become effective.

"Committee" means the Official Committee of Unsecured Creditors in the Case.

"Constructive Termination" means the occurrence of any of the following : (i) any actual or implied threat of discharge of Participant by Nellson under circumstances which would not constitute a Termination For Cause and which results in an involuntary resignation of employment by Participant, (ii) any act(s) by Nellson which are designed to or have the effect of rendering Participant's working conditions so intolerable or demeaning on a recurring basis that a reasonable person would resign such employment, which act(s) result in the involuntary resignation of employment by the Participant, (iii) a material adverse alteration in Participant's reporting relationships, position, responsibilities, title or status, which results in the involuntary resignation of employment by Participant; (iv) a material reduction in Participant's compensation or a substantial reduction in benefits provided to Participant that are provided for or referenced hereunder; (v) any material change in any benefit, retirement, or deferred compensation plan or arrangement made available to Participant which is adverse to Participant; or (vi) any actual or proposed relocation of Participant to a location that is more than 35 miles from the location of Participant's current employment for Nellson as of the Effective Date, which actual or proposed relocation causes the Participant to resign from his or her employment.

"EBITDA" means the earnings before interest, taxes, depreciation and amortization of Nellson, before professional fees and other costs incurred by Nellson in connection with the Restructuring and the Case and as determined by Nellson reasonably, in good faith, and in a manner consistent with Budgeted EBITDA.

"Effective Date" shall be the date on which this Plan is approved by the Bankruptcy Court.

"Existing Secured Debt" means any and all obligations of Nellson arising under that certain Amended and Restated Credit Agreement, dated as of July 3, 2003, and that certain Second Lien Credit Agreement, dated as of February 11, 2004, as such agreements may have been amended, supplemented or modified.

"First Half" means the two fiscal quarters ending July 2, 2006.

"First Half Incentive Bonus" means, with respect to a Participant, the dollar amount set forth opposite such Participant's name under the heading "First Half Incentive Bonus" on Exhibit "A" hereto, subject to adjustment under Section 2(d) hereof. To the extent that any individuals in addition to those listed on "Exhibit A" are designated as Participants in

LA: 152124.3

2

the discretion of Nellson, the First Half Incentive Bonus payable to such Participants shall not exceed $100,000 in the aggregate, as reflected on the "Emergency Contingency" line item on Exhibit "A."

"First Half Vesting Date" means, with respect to the First Half Incentive Bonus of any Participant, the first to occur of the following dates: (a) July 2, 2006, (b) the date during the First Half on which the Participant's employment with Nellson is terminated by Nellson for any reason other than a Termination For Cause, (c) the date during the First Half on which the Participant's employment with Nellson is terminated in a Constructive Termination, and (d) the Chapter 11 Plan Effective Date.

"Nellson" has the meaning given such term in the introductory paragraph of this Plan.

"Participant" means those individuals listed on Exhibit "A" hereto, plus any additional individuals that may be designated as Participants in the discretion of Nellson.

"Plan Payments" means the payments contemplated by this Plan.

"Restructuring" has the meaning given to such term in the recitals to this Plan.

"Second Half" means the two fiscal quarters ending December 31, 2006.

"Second Half Incentive Bonus" means, with respect to a Participant, the dollar amount set forth opposite such Participant's name under the heading "Second Half Incentive Bonus" on Exhibit "A" hereto, as adjusted by Section 3(d) hereof. To the extent that any individuals in addition to those listed on "Exhibit A" are designated as Participants in the discretion of Nellson, the Second Half Incentive Bonus payable to such Participants shall not exceed $100,000 in the aggregate, as reflected on the "Emergency Contingency" line item on Exhibit "A."

"Second Half Vesting Date" means, with respect to the Second Half Incentive Bonus of any Participant, the first to occur of the following dates: (a) December 31, 2006, (b) the date during the First Half on which the Participant's employment with Nellson is terminated by Nellson for any reason other than a Termination For Cause, (c) the date during the Second Half on which the Participant's employment with Nellson is terminated in a Constructive Termination, and (d) the Chapter 11 Plan Effective Date.

"Termination For Cause" means termination of a Participant upon a good faith determination by the Chief Executive Officer or Chief Financial Officer of Nellson (or the board of directors in the case of the CEO or CFO), as applicable, with respect to any Participant that any one or more of the following has occurred:

    (a)    The Participant shall have committed an act of fraud, embezzlement, misappropriation or breach of fiduciary duty against Nellson;

LA: 152124.3

3

APPELLEES' APPENDIX
PAGE 065

(b)     The Participant shall have been convicted by a court of competent jurisdiction of, or pleaded guilty or nolo contendere to, any felony or any crime involving moral turpitude;

(c)     The Participant shall have committed a breach of any confidentiality or non-compete obligation imposed by law or by covenants contained in any written employment or confidentiality agreement between Participant and Nellson;

(d)     The Participant shall have willfully failed to perform his duties on a regular basis and such willful failure shall have continued for a period of ten (10) calendar days after written notice to the Participant specifying such willful failure in reasonable detail;

(e)     The Participant shall have refused, after explicit written notice, to obey any lawful directive or resolution by the Chief Executive Officer or Chief Financial Officer of Nellson (or the board of directors in the case of the CEO or CFO) that is consistent with such Participant's duties to Nellson;

(f)     The Participant shall have committed either (i) acts of gross misconduct or (ii) acts constituting grounds for immediate dismissal pursuant to the effective employee handbook of Nellson or other written policies of Nellson; or

(g)     The Participant shall have engaged in the unlawful use or possession of illegal drugs on the premises of Nellson.

2.     First Half Incentive Bonus.

(a)     On the terms and conditions of this Plan, Nellson hereby grants and awards a First Half Incentive Bonus to each of the Participants.

(b)     No Participant shall be entitled to a First Half Incentive Bonus under this Plan unless and until such Participant's right to such First Half Incentive Bonus has vested under this Plan.

(c)     Subject to Section 2(d) and 2(e) hereof, a Participant's right to a First Half Incentive Bonus under this Plan shall vest on the First Half Vesting Date, if and only if both of the following conditions are met (i) Participant has remained regularly employed by Nellson from the date hereof through the First Half Vesting Date and (ii) actual EBITDA for the First Half, determined in accordance with Section 2(e), is seventy-five percent (75%) or more of Budgeted EBITDA for the First Half.

(d)     A Participant's First Half Incentive Bonus shall be in the amount set forth opposite such Participant's name under the heading "First Half Incentive Bonus" on Exhibit "A" hereto, which amount shall be subject to adjustment in accordance with this paragraph. If actual EBITDA for the First Half is less than one hundred percent (100%) of Budgeted EBITDA for the First Half, a Participant's First Half Incentive

APPELLEES' APPENDIX
PAGE 066

Bonus shall be reduced as follows: if such actual EBITDA is seventy-five percent (75%) or more of such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA.

(e)     Promptly after the end of the First Half, Nellson will close its accounting books and records for such period, prepare internal unaudited financial statements for such period in accordance with its post practices, and deliver such financial statements to the Committee and to UBS AG, Stamford Branch, as administrative agent and collateral agent for the Existing Secured Debt. A First Half Incentive Bonus that has vested under this Plan shall become due and payable, and Nellson shall pay such First Half Incentive Bonus, after the third (3rd) business day after such delivery.

3.     <u>Second Half Incentive Bonus</u>.

(a)     On the terms and conditions of this Plan, Nellson hereby grants and awards a Second Half Incentive Bonus to each of the Participants.

(b)     No Participant shall be entitled to a Second Half Incentive Bonus under this Plan unless and until such Participant's right to such Second Half Incentive Bonus has vested under this Plan.

(c)     Subject to Section 3(d) and 3(e) hereof, a Participant's right to a Second Half Incentive Bonus under this Plan shall vest on the Second Half Vesting Date, if and only if both of the following conditions are met: (i) Participant has remained regularly employed by Nellson from the date hereof through the Second Half Vesting Date and (ii) EBITDA for the Second Half, determined in accordance with Section 3(e), is seventy-five percent (75%) or more of Budgeted EBITDA for the Second Half.

(d)     A Participant's Second Half Incentive Bonus shall be in the amount set forth opposite such Participant's name under the heading "Second Half Incentive Bonus" on Exhibit "A" hereto, which amount shall be subject to adjustment in accordance with this paragraph. If actual EBITDA for the Second Half is less than one hundred percent (100%) of Budgeted EBITDA for the Second Half, a Participant's Second Half Incentive Bonus shall be reduced as follows: if such actual EBITDA is seventy-five percent (75%) or more of such Budgeted EBITDA, by an amount equal to the percentage by which such actual EBITDA is less than such Budgeted EBITDA.

(e)     Promptly after the end of the Second Half, Nellson will close its accounting books and records for such period, prepare internal unaudited financial statements for such period in accordance with past practices, and deliver such financial statements to the Committee and to UBS AG, Stamford Branch, as administrative agent and collateral agent for the Existing Secured Debt. A Second Half Incentive Bonus that has vested under this Plan shall become due and payable, and Nellson shall pay such Second Half Incentive Bonus, after the third (3rd) business day after such delivery.

APPELLEES' APPENDIX
PAGE 067

4.      **Effectiveness**. This Plan shall become effective upon its approval by the Bankruptcy Court. If this Plan does not become effective on or before July ___, 2006, it shall be deemed to have been terminated by Nellson and shall have no further force or effect.

5.      **Prior KERP**. By participating herein, each Participant agrees that he or she hereby waives and releases, effective upon receipt of any Plan Payment, any and all claims against Nellson arising under the Key Employee Retention Plan adopted by Nellson in January 2006. If Participant does not receive any Plan Payment to which he or she is entitled under the Plan on or before the completion of such Plan, such waiver and release shall be void and of no force or effect, and in such case Participant shall retain all rights to such claims.

6.      **Construction**. This Plan shall be governed by and construed in accordance with the laws of the State of California. Expressions such as "hereof," "herein," and "hereto" refer to this Plan, as amended from time to time, and all exhibits or schedules attached hereto. Unless otherwise stated in this Plan, "including" shall mean "including without limitation." Wherever the context so requires, the masculine shall include the feminine and neuter and the singular shall include the plural. The captions and headings of the articles, sections and paragraphs of this Plan are inserted solely for convenience of reference and are not a part of, and are not intended to govern, limit or aid in the construction or interpretation of any term or provision herein. Unless otherwise specified in this Plan, references to articles or sections refer to the articles and sections of this Plan.

7.      **Understanding**. The Participants acknowledge that they have carefully read this Plan, that they have had sufficient time and opportunity to consider its terms and to obtain legal advice, if desired; that they fully understand its final and binding effect, that the only promises made to such Participants are those stated above, and that they are signing and agreeing to the terms of this Plan voluntarily.

8.      **Plan Payments**. Any Plan Payments under this Plan shall be treated as cash compensation by Nellson to the Participant and shall be subject to all required or customary withholding in order to permit Nellson to comply with applicable law, including, without limitation, the employer's portion of any social security or other tax.

9.      **Amendments**. This Plan may be amended from time to time with respect to any Participant only by written instrument executed by Nellson and the Participant.

10.     **Assignment**. By virtue of the unique relationships and responsibilities involved in the services provided by the Participants, the rights and obligations of the Participants are not transferable or delegable and no Participant shall transfer any right, title or interest in this Plan, nor shall any such right, title or interest be subject to garnishment, attachment, lien, levy or execution or be subject to transfer by operation of law. This Plan shall bind and inure to the benefit of Nellson and the Participants and each of their respective successors, assigns, personal representatives, heirs and legatees. Each person executing this Plan and/or all amendments or supplements to it binds and obligates himself/herself, his/her present spouse, his/her estate, and all persons claiming by, through or under him/her.

LA: 152124.3

6

APPELLEES' APPENDIX
PAGE 068

11.    <u>Attorneys' Fees</u>. Except as otherwise provided herein, in the event of arbitration or litigation concerning any provision of this Plan or the rights and duties of any person in relation thereto, reasonable attorneys' fees shall be paid to the prevailing party.

12.    <u>Severability</u>.    If any term, provision, covenant or condition of this Plan is held by a court of competent jurisdiction to be invalid, void or unenforceable, the rest of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

13.    <u>Entire Plan</u>. This Plan constitutes the entire Management Incentive Plan promulgated by Nellson for the benefit of the Participants. Except as provided for in this Plan, there are no representations, plans, arrangements, or understandings, oral or written, between or among Nellson and any of the Participants relating to the subject matter hereof that are not fully expressed herein.

14.    <u>Waiver</u>. No waiver of any of the provisions of this Plan shall be deemed a waiver of the right of any Party hereto to enforce strict compliance with the provisions hereof in any subsequent instance.

LA: 152124.3

7

IN WITNESS WHEREOF, the parties hereto have duly executed this Plan as of the Effective Date.

**NELLSON NUTRACEUTICAL, INC.:**

By:  _____

Title:  _____

**NELLSON NUTRACEUTICAL POWDER DIVISION, INC.:**

By:  _____

Title:  _____

**NELLSON NORTHERN OPERATING, INC.:**

By:  _____

Title:  _____

**NELLSON HOLDINGS, INC.:**

By:  _____

Title:  _____

**NELLSON INTERMEDIATE HOLDINGS, INC.:**

By:  _____

Title:  _____

**[SIGNATURE PAGE TO NELLSON MANAGEMENT INCENTIVE PLAN]**

LA: 152124.3

8

**NELLSON NUTRACEUTICAL EASTERN DIVISION, INC.:**

By:    _____

Title: _____

**VITEX FOODS, INC.:**

By:    _____

Title: _____

[SIGNATURE PAGE TO NELLSON MANAGEMENT INCENTIVE PLAN]

APPELLEES' APPENDIX
PAGE 071

# Exhibit A
# to the Management
# Incentive Plan

## Intentionally Not Included

APPELLEES' APPENDIX
PAGE 072

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NELLSON NUTRACEUTICAL, INC., *et al.*, | Case No. 06-10072 (CSS)<br>Jointly Administered |
| Debtors. | |

## CERTIFICATE OF SERVICE

I, Kurt F. Gwynne, hereby certify that I am over 18 years of age and that on this 28th day of July 2006, I caused a true and correct copy of the **NOTICE OF APPEAL** to be served on the attached service list in the manners indicated.

By:  /s/ Kurt F. Gwynne
     Kurt F. Gwynne (No. 3951)

**NELLSON NUTRACEUTICAL, INC.**
2002 Service List
Case No. 06-10072 (CSS)

**VIA FIRST CLASS MAIL**
(Counsel to the Debtors)
Debra Grassgreen, Esquire
Maxim B. Litvak, Esquire
Pachulski, Stang, Ziehl, Young, Jones
  & Weintraub LLP
150 California Street, 15th Floor
San Francisco, CA  94111

**VIA FIRST CLASS MAIL**
(Counsel to the Debtors)
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Pachulski, Stang, Ziehl, Young, Jones
  & Weintraub LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA  90067

**VIA HAND DELIVERY**
(Counsel to the Debtors)
Laura Davis Jones, Esquire
Rachel Lowy Werkheiser, Esquire
Pachulski, Stang, Ziehl, Young, Jones
  & Weintraub LLP
919 North Market Street, 17th Floor
Wilmington, DE  19801

**VIA HAND DELIVERY**
(United States Trustee)
William Harrington, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**VIA HAND DELIVERY**
(Counsel to Fremont Investors VII, LLC)
Mark D. Collins, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  19801

**VIA FIRST CLASS MAIL**
(Counsel to Wells Fargo Bank, N.A. and Wells Fargo
Brokerage Services, LLC)
Richard Cobb, Esquire
Jamie L. Edmonson, Esquire
Landis, Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE  19801

**VIA HAND DELIVERY**
(Counsel to Erie Foods and Pride Transport, Inc.)
Jackson Shrum, Esquire
John J. Winter, Esquire
Harvey Pennington Ltd.
913 North Market Street, Suite 702
Wilmington, DE  19801

**VIA HAND DELIVERY**
(Counsel to UBS)
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market St., Suite 1200
Wilmington, DE  19801

**VIA FIRST CLASS MAIL**
(Counsel to UBS)
James J. Holman , Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA

**VIA FIRST CLASS MAIL**
(Counsel to UBS)
Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017

**VIA FIRST CLASS MAIL**
(Counsel to Wells Fargo Bank, N.A. and Well Fargo
Brokerage Services, LLC)
Maria K. Pum, Esquire
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071

**VIA FIRST CLASS MAIL**
(Counsel to Wells Fargo Bank, N.A. and Well Fargo
Brokerage Services, LLC)
Daniel P. Ginsberg, Esquire
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787

**VIA FIRST CLASS MAIL**
(Counsel to Erie Foods International, Inc.)
Dale G. Haake, Esquire
Katz, Huntoon & Fieweger, P.C.
1000 36th Avenue
Moline, IL 61265

**VIA FIRST CLASS MAIL**
(Counsel for the Official Committee of Unsecured
Creditors)
Claudia Springer, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

**VIA FIRST CLASS MAIL**
(Counsel to Fremont Investors VII, LLC)
Suzzanne Uhland, Esquire
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305

**VIA FIRST CLASS MAIL**
(Counsel to the Ad Hoc Committee First Lien
Lenders)
Fred Hodara, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY 10022-2524

**VIA FIRST CLASS MAIL**
(Wells Fargo Bank, N.A. and Well Fargo Brokerage
Services, LLC)
Ms. Ellen Trach
Wells Fargo Bank, N.A.
MAC N9305-198
90 South 7th Street
Minneapolis, MN 55479

**VIA FIRST CLASS MAIL**
(Counsel to Experimental and Applied Sciences, Inc.
a/k/a EAS, Inc.)
Samuel C. Wisotzkey, Esquire
Kohner, Mann & Kailas, S.C.
Washington Building
Barnabas Business Center
4650 North Port Washington Road
Milwaukee, WI 53212-1059

**VIA FIRST CLASS MAIL**
(Counsel to Ryco Packaging Corporation)
Steven J. Woolley, Esquire
Marks Clare & Richards, LLC
11605 Miracle Hills Drive., Suite 300
Omaha, NE 542005

**VIA HAND DELIVERY**
(Counsel to The Solae Company)
Jennifer A. L. Kelleher, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
(Counsel to The Solae Company)
Vincent J. Marriott, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

**VIA FIRST CLASS MAIL**
Andrew Herenstein, Esquire
Quadrangle Group LLC
375 Park Avenue, 14th Floor
New York, NY 10152

**VIA FIRST CLASS MAIL**
(Counsel to Clasen Quality Coatings, Inc.)
Thomas J. O'Brien, Esquire
Reinhard Boerner Van Dueren s.c.
1000 North Water Street, Suite 2100
P.O. Box 2965
Milwaukee, WI 53201-2965

**VIA HAND DELIVERY**
ATTN: Beth DiBiaso-Francis
ST PAUL TRAVELERS
Account Resolution
1 Tower Square – 5 MN
Hartford, CT 06183-4044

**VIA HAND DELIVERY**
(Counsel to Dell Marketing, L.P.)
Patricia P. McGonigle, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

**VIA FIRST CLASS MAIL**
(Counsel to Dell Marketing, L.P.)
Sabrina L. Streusand, Esquire
G. James Landon, Esquire
Hughes & Luce, LLP
111 Congress Avenue, Suite 900
Austin, TX 78701

**VIA FIRST CLASS MAIL**
(Counsel to CGU Capital Group)
Andrew A. Goodman, Esquire
Greenberg & Bass LLP
16000 Ventura Blvd., Suite 1000
Encino, CA 91436

**VIA FIRST CLASSS MAIL**
Michelle Patterson
CypressTree Invest. Management Co., Inc.
1 Boston Place, 16th Floor
Boston, MA 02108

**VIA FIRST CLASS MAIL**
Kamilah Boyd
General Electric Capital Corp.
Bank Loan Group
201 Merritt 7
P.O. Box 5201
Norwalk, CT 06856

**VIA HAND DELIVERY**
(Counsel to Informal Committee of First Lien Holders)
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
Steve Landzberg
Paul Lukaszewski
Roderick Bryce
Barclays Bank PLC
200 Park Avenue
New York, NY 10166

**VIA FIRST CLASS MAIL**
B. Dale Ulman
CGU Capital Group, LLC
P.O. Box 2573
Palos Verdes Peninsula, CA 90274

**VIA FIRST CLASS MAIL**
(Counsel to Informal Committee of First Lien Holders)
Scott L. Alberino, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Wilmington, DC 20036

**VIA FIRST CLASS MAIL**
(Counsel for NBTY)
Lisa M. Golden, Esquire
Craig M. Johnson, Esquire
Jaspan Schlesinger Hoffman, LLP
300 Garden City Plaza
Garden City, NY 11530

**VIA FIRST CLASS MAIL**
(Counsel to All Packaging, Inc.)
Lawrence Bass, Esquire
Holme Roberts & Owen LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203

**VIA FIRST CLASS MAIL**
Austin Nooney
McCormick & Company, Inc.
211 Schilling Circle
Hunt Valley, MD 21031

**VIA FIRST CLASS MAIL**
(Counsel to McCormick & Co.)
Daniel J. Carrigan, Esquire
DLA Piper Rudnick Gray Cary US LLP
1200 19th St., N.W., Suite 800
Washington, DC 20036

**VIA HAND DELIVERY**
(Counsel to Blommer Chocolate Co.)
Norman M Monhait, Esquire
Rosenthal, Monhait, & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
(Counsel to Blommer Chocolate Co.)
David W. Wirt, Esquire
Courtney Engelbrecht Barr, Esquire
Wintston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

**VIA FIRST CLASS MAIL**
(Counsel to Conopco)
Andrew C. Gold, Esquire
Herrick, Feinsten LLP
2 Park Avenue
New York, NY 10016

**VIA FIRST CLASS MAIL**
(Counsel to Barry Callebaut USA, Inc.)
Paula K. Tucker, Esquire
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201

**VIA FIRST CLASS MAIL**
Christopher B. Mosley, Esquire
Asst. City Attorney
City of Fort Worth
1000 Throckmorton Street
Fort Worth, TX 76102

**VIA FIRST CLASS MAIL**
Susan de la Cruz
CWY CREDIT
BANKRUPTCY DEPARTMENT
Con-Way Transportation Services, Inc.
555 Rufe Snow Drive, Suite 5515
North Richland Hills, TX 76180

**VIA FIRST CLASS MAIL**
(Counsel to Westaff (USA), Inc.)
James E. Huggett, Esquire
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806

**VIA FIRST CLASS MAIL**
Ted Shouten
Nellson Nutraceutical, Inc.
5801 Ayala Avenue
Irwindale, CA 91706

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:

NELLSON NUTRACEUTICAL, INC., et al.,

                                    Debtors.

| | |
|---|---|
| UNITED STATES TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, <br><br> Appellants, <br><br> v. <br><br> NELLSON NUTRACEUTICAL, INC., et al., <br><br> Appellees. | Civil Action No. 06-520 (GMS) <br> Civil Action No. 06-521 (GMS) <br><br><br> Bankruptcy Case No. 06-10072 (CSS) <br> Appeal No. 06-45 |

## AFFIDAVIT OF SERVICE

STATE OF DELAWARE          )
                          )SS:
COUNTY OF NEW CASTLE      )

        Karina Yee, being duly sworn according to law, deposes and says that she is employed by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP, counsel for the Appellees, in the above-captioned action, and that on the 26th day of June, 2007, she caused a copy of the following document(s) to be served upon the attached service list(s) in the manner indicated:

        **Appendix Related to Brief in Support of Appellees' Motion to Dismiss Appeal on Mootness Grounds**

_Karina Yee_
Karina Yee

Sworn to and subscribed before
me this 26 day of June, 2007

_Vanessa Q. Preston_
Notary Public
My Commission Expires: 12-21-08

VANESSA A. PRESTON
Notary Public - State of Delaware
My Comm. Expires March 21, 2008

**Nellson Nutraceutical, Inc. Appeal Service List**
Case No. 06-10072 (CSS)
Document No. 120478
02 – Interoffice Delivery
06 – Hand Delivery
05 – First Class Mail

(Counsel to the Debtors)
Laura Davis Jones, Esquire
Rachel Lowy Werkheiser, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Interoffice Mail**
(Counsel to the Debtors)
Maxim B. Litvak, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
150 California Street, 15th Floor
San Francisco, CA  94111

**Interoffice Mail**
(Counsel to the Debtors)
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA  90067

**Hand Delivery**
(United States Trustee)
William Harrington, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**Hand Delivery**
(Mediator)
J. Richard Tucker, Esquire
Maron Marvel Bradley & Anderson, P.A.
1201 N. Market Street, Suite 900
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Fremont Investors VII, LLC)
Mark D. Collins, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Informal Committee of First Lien Lenders)
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to UBS)
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the Official Committee of Unsecured Creditors)
Kurt F. Gwynne, Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE  19801

**First Class Mail**
(Counsel to UBS)
James J. Holman , Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA

**First Class Mail**
(Counsel to UBS)
Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA  90017

**First Class Mail**
(Counsel to Fremont Investors VII, LLC)
Suzzanne Uhland, Esquire
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111-3305

**Fist Class Mail**
(Counsel to the Ad Hoc Committee of First
Lien Lenders)
Fred Hodara, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY  10022

**First Class Mail**
(Counsel to the Official Committee of
Unsecured Creditors)
Claudia Springer, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103