# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| NELLSON NUTRACEUTICAL, INC., *et al.*, | : | Case No. 06-10072 (CSS) |
|  | : | Jointly Administered |
| Debtors. | : |  |

|  |  |  |
|---|---|---|
| UNITED STATES TRUSTEE and OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | : | Civil Action Nos. 06-00520 (GMS) and 06-00521 (GMS) |
|  | : |  |
| Appellants, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| NELLSON NUTRACEUTICAL, INC., *et al.*, | : |  |
|  | : |  |
| Appellees. | : |  |

## ANSWERING BRIEF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO APPELLEES' MOTION TO DISMISS APPEAL ON MOOTNESS GROUNDS

Dated: July 30, 2007
        Wilmington, Delaware

Kurt F. Gwynne (No. 3951)
Kimberly E.C. Lawson (No. 3966)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail:kgwynne@reedsmith.com
        klawson@reedsmith.com

Attorneys for the Official Committee of Unsecured Creditors

---

[1]    The Debtors are the following entities: Nellson Nutraceutical, Inc., Nellson Holdings, Inc., Nellson Intermediate Holdings, Inc., Nellson Northern Operating, Inc., Nellson Nutraceutical Eastern Division, Inc., Nellson Nutraceutical Powder Division, Inc., and Vitex Foods, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

COUNTER-STATEMENT OF FACTS ............................................................................ 1

ARGUMENT ................................................................................................................... 3

   I.    The Appeal is Not Constitutionally Moot ................................................................ 3

   II.    The Appeal is Not Equitably Moot ......................................................................... 6

       A.    Substantial Consummation of a Plan ................................................................ 9

       B.    The Failure to Obtain a Stay. ........................................................................ 10

       C.    The Effect of the Requested Relief on Third Parties Not Before the Court. ...... 11

       D.    Whether the Relief Requested Would Affect the Success of the Plan. ............. 13

       E.    The Public Policy of Affording Finality to Bankruptcy Judgments. ............... 14

CONCLUSION ............................................................................................................... 17

WILLIB-54465.3-KELAWSON 7/30/07 6:48 PM

# TABLE OF AUTHORITIES

<u>Page</u>

## Cases

*Capital Factors, Inc. v. Kmart Corp.*,
   2003 WL 22282518 (7th Cir. 2003) ..................................................... 12

*Church of Scientology v. United States*,
   506 U.S. 9, 12, 113 S.Ct. 447 (1992).................................................... 3

*Colorado River Water Conservation Dist. V. United States*,
   424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)....................... 6

*In re Continental Airlines*,
   91 F.3d 553 (3d Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1057 (1997)...................... *passim*

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)................................................................ 7, 9

*In the Matter of Kmart Corp.*,
   359 F.3d 866 (7th Cir. 2004) ............................................................ 4, 12, 13

*In the Matter of Quality Spice Corp.*,
   107 B.R. 843 (D.NJ. 1989) ................................................................ 8

*Kuntz v. Saul, Ewing, Remick & Saul (In re Grand Union Co.)*,
   200 B.R. 101 (D.Del. 1996)................................................................ 7

*Mac Panel Co. v. Virginia Panel Corp.*,
   283 F.3d 622 (4th Cir. 2002) ............................................................. 10

*Mine Management Inc. v. Wolfe (In re Mountain Laurel Resources Co.)*,
   2000 WL 341913 at *1 (4th Cir. April 3, 2000) ...................................... 8

*Nordhoff Inv., Inc. v. Zenith Elec. Corp.*,
   250 B.R. 207 (D. Del. 2000)............................................................... 10

*Nordhoff Inv., Inc. v. Zenith Elec. Corp.*,
   258 F.3d 180 (3d Cir. 2001)................................................................ 7, 14

*Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. Inc. v. Official Comm. of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp.)*,
   988 F.2d 322 (2d Cir. 1993)............................................................... 5, 6

WILLIB-54465.3-KELAWSON 7/30/07 6:48 PM

*RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),*
  16 F.3d 552 (3d Cir. 1994 ................................................................................ 3

*Stamford Computer Group, Inc. v. Exide Technologies (In re Exide Technologies),*
  2004 WL 1465760 (D.Del. June 25, 2004) ................................................... 10, 15

*The Huntington National Bank v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.),*
  2002 WL 31681538 (S.D.W.Va. November 19, 2002) ......................................... 8

*U.S. Trustee v. The Official Committee of Equity Security Holders (In re Zenith Electronics Corp.),*
  329 F.3d 338 (3d Cir. 2003) ................................................................... *passim*

*United Artists Theatre Co. v. Walton,*
  315 F.3d 217 (3d Cir. 2003) .................................................................. 3, 7

## Rules

Fed.R.Bankr.P. 8001(a)(2) ........................................................................ 3

## Other

George W. Kuney, *Hijacking Chapter 11*, 21 Emory Bankr. Dev. J. 19, 79-90 (2004) ............. 15

A. Mechele Dickerson, *Approving Employee Retention and Severance Programs: Judicial Discretion Run Amuck?*, 11 Amer. Bankr. Inst. L. Rev. 93, 93 (2003) ...................................... 15

Ien Cheng, *Barons of Bankruptcy Part I: Survivors Who Laughed All the Way to the Bank*, Fin. Times (London), July 31, 2002, at 10 ................................................................ 15

H.R.Rep. No. 109-31 (109th Cong., 1st Sess. 2005) at 19 ......................................... 16

4 *Collier on Bankruptcy*, 15th Ed. Revised 2005, pp. 503-580 ................................... 16

WILLIB-54465.3-KELAWSON 7/30/07 6:48 PM

## COUNTER-STATEMENT OF FACTS

**A.    The Management Incentive Plan**

On January 28, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief

under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On April 28,

2006, the Debtors filed their Motion for Entry of an Order Authorizing and Approving Payments

Under Management Incentive Plan. Bankr. D.I. 334. The Bankruptcy Court entered the Order

approving the MIP[2] on July 18, 2006. Bankr. D.I. 482.

On July 27, 2006, the U.S. Trustee (the "Trustee") filed the Notice of Appeal from Order

Granting Debtors' Motion for Entry of an Order Authorizing and Approving Payments Under

Management Incentive Plan (Related to Docket Entry No. 482). Bankr. D.I. 512. On July 28,

2006, the Official Committee of Unsecured Creditors (the "Committee") filed its Notice of

Appeal. Bankr. D.I. 518.

During discovery in connection with the MIP Motion, the Committee learned that after

the Petition Date, in March of April of 2006, the Debtors implemented an employee bonus

program that had not been disclosed to the Committee, the Trustee, or other parties in interest

(the "Undisclosed Bonus Program"). The Undisclosed Bonus Program paid bonuses of up to

seventy percent of the base salaries of the recipients, which included senior management.

On July 31, 2006, thirteen days after the Bankruptcy Court entered the Order, the Debtors

made payments to approximately eight to ten members of management for goals that were met

during the first half of the MIP period.

---

[2]    Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the
Brief in Support of Appellees' Motion to Dismiss Appeal on Mootness Grounds (D.I. 6).

**B.     Mandatory Mediation**

On July 23, 2004, Chief Judge Sue L. Robinson entered an Order regarding Procedures to

Govern Mediation of Appeals From the United States Bankruptcy Court for This District (the

"Mediation Order").  App. B-1.[3]  Pursuant to the Mediation Order, all bankruptcy appeals are

required to participate in mandatory mediation.  *See* App. C-1.  Appellate briefing is "deffered

during the pendency of mediation unless the Court determines otherwise."  *See* App. C-2 at ¶ 3.

The mediator's fees must be divided equally among the appellants and appellees.  *See* App. C-3

at ¶ 5(e).

In accordance with the Mediation Order, this appeal was referred to mediation.  The

Committee and the Trustee have each executed the mediator's engagement agreement and paid

their proportionate share of the mediator's fees.  To date, the Debtors have neither executed the

mediator's engagement agreement nor paid their proportion of the mediator's fees.  Unless and

until the Debtors do so, the mediation will not take place.  And, pursuant to the express mandates

of the Mediation Order, the Committee and the Trustee are prohibited from filing their appellate

briefs.  Accordingly, the appeal has been at a standstill for a year because of the Debtors' failure

to execute the mediator's engagement agreement and pay their portion of the mediator's fees, not

because "literally nothing has been done by Appellants to further the appeal."

**C.     The Plan**

The Debtors obtained extensions of the exclusive period in which the Debtors can file

and solicit votes for a plan.  As of the date of this Brief, the Debtors have not filed a plan.

---

3    References to App. C-[] shall refer to the Appendix to the Answering Brief of the Official Committee
of Unsecured Creditors to Appellees' Motion to Dismiss Appeal on Mootness Grounds filed
contemporaneously with this Brief.

## ARGUMENT

**I.    The Appeal is Not Constitutionally Moot**

This appeal is not constitutionally moot under established Third Circuit precedent.  There is a difference between an appellate court's "inability to alter the outcome" where an appeal is constitutionally moot and an appellate court's "unwillingness to alter the outcome" where an appeal is equitably moot.  *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1057 (1997); *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 228 (3d Cir. 2003) (quoting *Continental*).  An appeal is not constitutionally moot "'merely because a court cannot restore the parties to the *status quo ante*.  Rather, when a court can fashion '*some form of meaningful relief*,' even if it only partially redresses the grievances of the prevailing party, the appeal is not moot."  *Continental Airlines*, 91 F.3d at 559 (en banc) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 499 (1992)); *see also RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 560 (3d Cir. 1994)(en banc) (same).

The Debtors argue that this case is constitutionally moot because the bonuses under the MIP have already been paid and the Committee and Trustee did not obtain a stay of the Order.  The Debtors also argue that the eight to ten members of management that received the bonus payments are not parties to this appeal.  Therefore, the Debtors claim that no form of meaningful relief can be granted by this appeal.

As a preliminary matter, notices of appeals in bankruptcy must name "all parties to the judgment, order, or decree appealed from".  Fed.R.Bankr.P. 8001(a)(2).  Therefore, contrary to the arguments raised by the Debtors, the Committee was not required to name the actual recipients of the bonuses as parties to this appeal.  The Debtors deemed "confidential" the

- 3 -

identities of the employees to whom the Debtors intended to pay the bonuses, and the amounts of such bonuses.[4]  Therefore, the names of the recipients of the MIP payments and the amounts received by each have never been made public.  It is disingenuous for the Debtors to now argue that the Committee cannot obtain the relief requested because it did not name the individual recipients of the bonuses as parties to this appeal.

The Seventh Circuit's opinion in *In the Matter of Kmart Corp.*, 359 F.3d 866, 870 (7th Cir. 2004) bankruptcy is instructive on this issue.  One of the recipients of the critical vendor payments argued that it was not a party to the appeal of the critical vendor order; therefore, it was not affected by the order reversing the bankruptcy court.  *Kmart*.  The Seventh Circuit held that "[n]o rule of law requires personal notice to all entities that might be affected by the precedential (as opposed to the preclusive) force of an appellate decision."  *Kmart Corp.*, 359 F.3d at 871.  Therefore, the Committee was not required to name each recipient of a bonus payment under the MIP to this appeal.

As to the Debtors arguments that no form of meaningful relief can be granted because the monies have already been paid and no stay was obtain by the Committee or Trustee, in an analogous case the Third Circuit held that some form of meaningful relief could be granted where the issue on appeal was the potential disgorgement of professional fees of a disbanded unofficial committee.  *U.S. Trustee v. The Official Comm. of Equity Security Holders (In re Zenith Elecs. Corp.)*, 329 F.3d 338 (3d Cir. 2003).  In the *Zenith* case, the disgorgement was permitted even in the context of substantial confirmation of a plan.  In this case, the Debtors have not filed a plan yet, so it is even earlier in the process than in *Zenith*.  As there was some form of

---

4    Since the Debtors have deemed the identities and amounts of such bonuses "confidential," the Committee does not disclose such information in this Brief.  The Committee reserves the right to disclose such information at any hearing on the Debtors motion for dismissal.

meaningful relief that could be granted in *Zenith* (i.e. the disgorgement of the professional fees), the Third Circuit declined to find constitutional mootness.

In *Zenith*, the Third Circuit specifically noted that the bankruptcy court had retained jurisdiction to act on "'any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims ....'" Id. at 340, fn 1. In this case, the Bankruptcy Court also specifically retained jurisdiction "over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the Management Incentive Plan." See App. A-2.[5] Here, as in *Zenith*, the Bankruptcy Court retained jurisdiction over the MIP payments. In addition, here, as in *Zenith*, the Debtors have the ability to recoup the monies paid under the MIP. Therefore, this case is analogous to *Zenith*, which is binding case law in this circuit. Based upon the foregoing, this appeal is not constitutionally moot under established Third Circuit precedent.

The Debtors, however, argue that the Second Circuit *Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. Inc. v. Official Comm. of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 988 F.2d 322, 324 (2d Cir. 1993) case is highly analogous to this case. First, the Second Circuit opinion is not binding in this circuit. Second, the *Chateaugay Corp.* case is an equitable mootness case, not a case based upon constitutional mootness. Third, the *Chateaugay Corp.* case is factually distinguishable from the case at bar.[6]

---

5    App. A-[] shall refer to the Appendix Related to Brief in Support of Appellees' Motion to Dismiss
     Appeal on Mootness Ground filed by the Debtors at D.I. 7.

6    In order to resolve the $3 billion contingent claims of the PBGC and to avoid a mandatory
     termination of the pension plan under Section 4042(a) of ERISA, the debtors in *Chateaugay Corp.*
     sought and obtained authorization from the bankruptcy court to pay $27 million to their pension plan.
     *Chateaugay Corp.*, 988 F.2d at 324. Pursuant to another settlement with the PBGC, the bankruptcy
     court authorized $163 million in additional payments to the pension plan. *Id.* This order was
     appealed. While the appeal was pending, the bankruptcy court approved a collective bargaining
     agreement under which the debtors agreed to continue to fund the pension plan. *Id.* at 325. At the

WILLIB-54465.3-KELAWSON 7/30/07 6:48 PM

Most importantly, this case does not take place in the context of a confirmed plan of reorganization. The MIP program and Order were not an integral part of any agreement that cleared the way for a successful reorganization of the Debtors. Here, the Debtors have not even filed a plan yet. In addition, this case does not involve payments exceeding $190 million or the settlement of over $3 billion in claims against the estates. It only involves the payment of $550,000 to approximately eight to ten members of management. See D.I. 6 at 3 and 11. Moreover, this is not a case where the money paid was disbursed to hundreds or thousands of individuals. The money was disbursed to a select group of approximately eight to ten employees at the management level. Finally, the MIP is not essential or integral to the Debtors' ability to reorganize. Substantially all of the assets of the Debtors are set to be sold on August 23, 2007. Therefore, the return of the MIP payments would not be detrimental to the Debtors' ability to reorganize. Accordingly, this case is factually distinguishable from the *Chateaugay Corp.* case. And, based upon the foregoing, this appeal is not constitutionally moot and should not be dismissed.

## II.    The Appeal is Not Equitably Moot

The general rule is that a court has a "virtually unflagging obligation" to exercise its jurisdiction to hear an appeal. *Colorado River Water Conservation Dist. V. United States*, 424

---

time of the appeal, all of the pension funds were paid in full and all of the money had been disbursed to the plan beneficiaries. *Id.* at 326. According to the Second Circuit, the funding of the pension plan was a "key component" of the collective bargaining agreement, which "cleared the way for a reorganization of all of the debtors' estates." *Id.* In terms of recovery of the monies paid, the Court looked to three potential sources: (1) the plan beneficiaries, (2) the PBGC, and (3) the pension plan. The Court found that recovery from the plan beneficiaries would be impracticable and would impose an "unfair hardship on faultless beneficiaries who are not parties" to the appeal. *Id.* at 326. The Second Circuit also found that, if even lawful, having the PBGC return the money to the estates would trigger a termination of the pension plan, which would ultimately put the obligations back on the estates. *Id.* As far as recovery from the pension plan itself, the Court found that if the money was recovered from the plan, the obligations would again fall back on the estates because the debtors were jointly and severally liable for the pension payments. *Id.*

WILLIB-54465.3-KELAWSON 7/30/07 6:48 PM

U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Zenith*, 329 F.3d at 347. A limited and well-defined exception to the general rule is the doctrine of equitable mootness. *Zenith*, 329 F.3d at 347. In the Third Circuit, "[t]he doctrine has been carefully developed to apply only in that rare situation in which a successful appeal would undo a complicated plan of reorganization." *Id.*

The doctrine of equitable mootness permits a district court to dismiss a bankruptcy appeal for equitable and prudential reasons even when some form of relief can be fashioned by the district court. *Continental Airlines*, 91 F.3d at 557-60. But, the doctrine should be "limited in scope and cautiously applied … to prevent substantial harm …." *Id.* at 559. In adopting the doctrine of equitable mootness, the Third Circuit set forth five factors that must be considered when a district court is making a determination as to whether to dismiss a bankruptcy appeal:

> (1) whether the reorganization plan has been substantially consummated;
>
> (2) whether a stay has been obtained;
>
> (3) whether the relief requested would affect the rights of parties not before the court;
>
> (4) whether the relief requested would affect the success of the plan; and
>
> (5) the public policy of affording finality to bankruptcy judgments.

*Id.* at 560; *United Artists*, 315 F.3d at 228; *Nordhoff Inv., Inc. v. Zenith Elec. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001). The "foremost consideration" is whether the reorganization plan has been substantially consummated. *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000); *Continental*, 91 F.3d at 560 (substantial consummation is the foremost consideration); *Nordhoff*, 258 F.3d at 185 (same); *Kuntz v. Saul, Ewing, Remick & Saul (In re Grand Union Co.)*, 200 B.R. 101, 105 (D.Del. 1996) (same). In applying the factors, the district court "must remain mindful that the underlying purpose of the doctrine is to 'prevent a court from unscrambling complex

- 7 -

bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.'" *Zenith*, 329 F.3d at 345 (quoting *Nordhoff*, 258 F.3d 180).

The Third Circuit, like the Seventh Circuit, has limited the application of the doctrine of equitable mootness to the substantial consummation of a plan context. The Debtors have not cited any cases in this circuit to the contrary. Instead, the Debtors cite three non-binding cases that are factually distinguishable from the case at bar.[7] Based upon consideration of the Third

---

[7]    In support of their arguments that this case is equitably moot, the Debtors refer this Court to three cases where equitable mootness was found when there was no substantial consummation of a plan. See D.I. 6 at 8. These cases are not binding on this Court; however, the Committee will address the factual distinctions for the three cases cited by the Debtors. The first case involved an appeal of a settlement agreement resolving a "complex fifteen-year history of litigation concerning the environmental cleanup of a 241-acre site ...." *Mine Management Inc. v. Wolfe (In re Mountain Laurel Resources Co.)*, 2000 WL 341913 at *1 (4th Cir. April 3, 2000). The settlement agreement involved multiple parties, including parties not involved in any of the pending litigation such as citizens groups, the National Park Service and the Federal Office of Surface Mining. *Id.* at *2. The Fourth Circuit held that reversing the settlement agreement would "be manifestly unjust to both the parties and the citizens who waited so long for the pollution ... to be rectified." *Id.* at *4. In addition, the Court held that a reversal of the settlement agreement would subject one of the main parties to additional litigation and would "likely result in 'unraveling the entire settlement agreement.'" *Id.*. The final consideration was the public interest in abating the water pollution, which was important because the citizens had been waiting for a resolution of the litigation for fifteen years. *Id.* Based upon these considerations, the Fourth Circuit held that the appeal was equitably moot. This case does not involve the resolution of fifteen years of complex litigation that resolves multiple claims and liabilities asserted against the estates. This only involves the payment of bonuses to a very limited number of employees at the management level. Reversing the Order would not unravel the entire bankruptcy case and would not affect the Debtors' ability to substantially consummate a plan of reorganization. Therefore, not only is the *Mine Management* case not binding on this Court, it is also factually distinguishable.

The second case cited by the Debtors involved the disgorgement of payroll paid to hundreds of employees. *The Huntington National Bank v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.)*, 2002 WL 31681538 (S.D.W.Va. November 19, 2002). The *Huntington National* case involved payments to "probably hundreds" of employees for salaries and wages. *Id.* at *3. The case at bar only involves the payment of bonuses to a very limited number of members of the management team. And, it is not payment of salaries or wages, only bonuses. In addition, the Third Circuit has not adopted the more expansive view of equitable mootness utilized by the Fourth Circuit.

The third and final case cited by the Debtors involved the settlement of complex litigation relating to pepper, a commodity whose market was fluctuating significantly during the case. *In the Matter of Quality Spice Corp.*, 107 B.R. 843 (D.NJ. 1989). The settlement agreement resolved litigation against approximately 150 different customers, suppliers and other third-party defendants and involved the payment of millions of dollars pursuant to the terms of the settlement agreement. *Id.* As previously indicated, the case at bar does not implicate the settlement of complex litigation involving multiple parties that if undone would unravel the entire settlement. It also does not involve

Circuit's equitable and prudential factors, the appeal is not equitably moot.

### A.    Substantial Consummation of a Plan

Although the five "factors are given varying weight, depending on the particular circumstances, [] the foremost consideration is whether the reorganization plan has been substantially consummated." *PWS Holding*, 228 F.3d at 236; *see also Zenith*, 329 F.3d 338. In terms of the first factor, the Third Circuit has made clear that it does not involve a "formalistic inquiry into whether the plan has been substantially consummated ...." *Zenith*, 329 F.3d at 345. Instead, the inquiry is "whether, if successful, the appeal might unravel the reorganization plan." *Zenith*, 329 F.3d at 346; *PWS Holding*, 228 F.3d at 236.

The Third Circuit held that the disgorgement of professional fees and expenses would not cause a reorganization to unravel even though the plan had been substantially consummated. *Zenith*, 329 F.3d at 346. The Third Circuit held that such an appeal "would not 'knock the props out from under the authorization for every transaction that has taken place,' and in fact would leave the plan entirely intact." *Id.* As in *Zenith*, this appeal would only result in the return of money to the estate, not in the unraveling of any plan of reorganization. *Id.*

As of the date of this Brief, the Debtors have not even filed a plan. Therefore, this case is clearly not a case involving the substantial consummation of a plan. Accordingly, the most critical factor in the equitable mootness analysis does not favor dismissal of the appeal. Consequently, this appeal cannot be dismissed as equitably moot.

Since the Debtors cannot argue substantial consummation of a plan of reorganization, they argue that substantial consummation of the MIP Order is sufficient for equitable mootness.

---

resolution of multiple claims against the Debtors that could prevent the Debtors' ability to reorganize. The Order that this Court is being asked to reverse only involves the recovery of $550,000 in payments to approximately eight to ten members of the management team for bonuses.

In support of their argument, the Debtors rely on the Fourth Circuit's standard for equitable mootness. Specifically, the Debtors argue that the doctrine of equitable mootness should apply to situations involving "other equitable relief" in addition to appeals involving a plan of reorganization. *See Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). The Third Circuit, however, has not expanded the factors for equitable mootness to apply to situations other than the substantial consummation of a plan of reorganization. *Stamford Computer Group, Inc. v. Exide Technologies (In re Exide Technologies)*, 2004 WL 1465760 (D.Del. 2004) (This Court held that substantial consummation of a plan, and not an order rejecting a lease, is the central consideration for equitable mootness in the Third Circuit.). Accordingly, this Court should not be persuaded by the Debtors attempt to side step binding Third Circuit law. Based upon the foregoing, the Debtors have failed to demonstrate that the most important factor in an equitable mootness analysis weighs in favor of dismissal.

**B.      The Failure to Obtain a Stay.**

Ordinarily, the failure to seek or obtain a stay weighs in favor of dismissal for equitable mootness. *See Continental*, 91 F.3d at 561-562; *see also Nordhoff Inv., Inc. v. Zenith Elec. Corp.*, 250 B.R. 207, 214 (D. Del. 2000). The stay factor is "largely duplicative of the 'substantial consummation' factor" in the sense that a plan cannot be substantially consummated if a stay has successfully been obtained. *Zenith*, 329 F.3d at 347 (quoting *Nordhoff*, 250 B.R. at 214. The stay factor should not be given much weight when the appeal "would not necessitate an unraveling of the plan" because there is little reason for the appellant to seek a stay. *Zenith*, 329 F.3d at 347. The stay factor should only weigh heavily against an appellant if a reorganization plan was confirmed by the failure to obtain the stay and its existence is later threatened by the appeal. *Id.*

The Committee did not seek a stay pending appeal. Nevertheless, as previously discussed in connection with the substantial consummation factor, this factor should not be given much weight because the granting of this appeal would not necessitate an unraveling of a plan of reorganization.[8] Therefore, this factor does not weigh in favor of dismissal for equitable mootness.

**C.      The Effect of the Requested Relief on Third Parties Not Before the Court.**

"[T]he reliance by third parties, in particular investors, on the finality of the transaction" is one of the prudential factors to consider when determining whether to allow an appeal following consummation of a plan. *Continental* 91 F.3d at 562. The doctrine of equitable mootness protects non-adverse third parties who are not parties to the appeal but who have "acted in reliance on the plan as implemented." *Id.*

As previously discussed, a fatal flaw to the application of this doctrine to the appeal is the absence of a substantially consummated plan. Even if this Court were to consider the doctrine of equitable mootness in terms of the Order, the Debtors have failed to provide any evidence that the recipients of the bonuses relied on the Order to their detriment. This is clear when the timeline of the MIP is examined. The Debtors did not file the MIP Motion until April 28, 2006 – more than halfway through the first half of the MIP. The Order was not entered until July 18, 2006, almost a month after the expiration of the first half of the MIP and just 13 days prior to the payment of the bonuses under the MIP. The Debtors admit that the goals necessary for the issuance of bonuses related to the second half of the MIP were not met. Consequently, no payments were made after July 31, 2006 under the MIP. *Therefore, the recipients of the*

---

8    Although the Debtors argue that it has been months since the MIP payments were made, the delay was the fault of the Debtors in not executing the mediator's engagement agreement and failing to pay their proportionate share of the mediator's fees.

*management bonuses could hardly claim that they relied on the Order, since the work that they*

*performed in order to get the bonuses all occurred prior to the approval of the MIP.*  And in fact,

most of the work occurred prior to the filing of the MIP Motion itself.

The Debtors also argue that it would be "dangerously harmful to the estates" if the

recipients were forced to return the money.  The Debtors, however, fail to provide any evidence

of the dangerous harm that would be inflicted on the estates if this appeal was granted.[9]  In

addition, on August 23, 2007, the Debtor will be selling substantially all of their assets.

Therefore, the return of the bonus payments by the select members of management that received

them, would not be dangerously harmful to the estates.  The Debtors argue that the eight to ten

recipients of the $550,000 in bonus payments under the MIP relied on the payments and it would

be inequitable to require them to return the monies paid.  The Seventh Circuit faced similar

arguments in the appeal of a critical vendor order.  *Kmart*, 359 F.3d at 870.  In *Kmart*, the

Seventh Circuit reversed an order of the bankruptcy court authorizing Kmart to pay pre-petition

claims in the aggregate sum of approximately $300 million to over 2,300 suppliers.  *See Kmart*,

359 F.3d at 869; *see also Capital Factors, Inc. v. Kmart Corp.*, 2003 WL 22282518 (7th Cir.

2003).  Kmart argued that the recipients of the critical vendor payments had relied upon the

payments and therefore the appeal was equitably moot.  The Seventh Circuit held that because

there was no confirmed plan, the appeal was not equitably moot.  *Capital Factors*, 2003 WL

22282518 at *4.  The court also held that "it [was] not too late to order that the monies paid be

returned."  *Id.*  As in the Seventh Circuit, there is no confirmed plan at issue in this appeal and it

---

9   In this section of the Brief, the Debtors also argue that the recipients of the bonuses should not be
    "prejudiced for the Appellants' lack of diligence in pursuing this appeal."  As previously noted, the
    reason that this appeal is not going forward is because the Debtors have failed to execute the
    mediator's engagement agreement and pay their portion of the mediator's fees.  Therefore, any
    prejudice resulting from the length of this appeal falls to the Debtors, not the Committee or Trustee.

is not too late for the return of the monies paid to the Debtors' management.

The Debtors also argue that because the recipients of the MIP payments are not parties to this appeal, it would be impossible to force them to return the monies paid. As previously discussed in detail, pursuant to Fed.R.Bankr.P. 8001(a)2), the Committee was not required to name the actual recipients of the bonuses as parties to this appeal. In addition, since the Debtors deemed the identities of and amounts paid to the recipients "confidential,"[10] it is disingenuous for the Debtors to now argue that the Committee cannot obtain the relief requested because it did not name the individual recipients of the bonuses as parties to this appeal. Moreover, as the Seventh Circuit instructs, there is no requirement of personal notice to all entities that might be affected by this Court's reversal of the MIP Order. *Kmart*, 359 F.3d at 870. Accordingly, this factor does not weigh in favor of dismissing the appeal as equitably moot.

### D.    Whether the Relief Requested Would Affect the Success of the Plan.

In this appeal, the Committee seeks to reverse the authorization for the MIP. As previously discussed, the issue in the Third Circuit is not the success of the Order, but the success of the plan. Since there is no plan at issue, this factor does not weigh in favor of dismissal.

In the event that this Court considers the success of the Order the relevant analysis, the appeal should still not be dismissed as equitably moot. As admitted by the Debtors, the MIP itself was not successful. *See* D.I. 6 at 3. The term of the MIP was one year, with goals set at six month intervals. The Debtors only paid bonuses under the first half of the MIP because the goals were not met in the second half. In addition, the bonuses paid under the first half related to work

---

10    Since the Debtors have deemed the identities and amounts of such bonuses "confidential," the Committee does not disclose such information in this Brief. The Committee reserves the right to disclose such information at any hearing on the Debtors motion for dismissal.

completed prior to the entry of the Order approving the MIP. Any impact of the appeal on the

MIP would be minimal. In addition, other than general assertions, the Debtors have failed to

demonstrate that the MIP maximized the value of the estates or that reversing the Order would

have a detrimental affect on a plan of reorganization. Consequently, this factor does not weigh

in favor of dismissal.

### E.    The Public Policy of Affording Finality to Bankruptcy Judgments.

The Third Circuit described the inquiry required for this factor as:

> [W]e should ask whether we want to encourage or discourage
> reliance by investors and others on the finality of bankruptcy
> confirmation orders. The strong public policy in favor of
> maximizing debtors' estates and facilitating successful
> reorganization, reflected in the Code itself, clearly weighs in favor
> of encouraging such reliance. Indeed, the importance of allowing
> approved reorganizations to go forward in reliance on bankruptcy
> court confirmation orders may be the central animating force
> behind the equitable mootness doctrine.

*Continental*, 91 F.3d 553, 565. The Third Circuit also explained that the "public policy affording

finality to bankruptcy judgments is better described as the lens through which the other equitable

mootness factors should be viewed." *Nordhoff*, 258 at 190. Here, there is no reliance on the

consummation of a plan of reorganization. There is only an order approving a MIP, which by

the Debtors' own admission was not successful. The Debtors argue that they "needed to get the

MIP in place promptly to properly incentivize their management employees to achieve certain

operational objectives." *See* D.I. 6 at 13. The MIP Motion, however, was not filed until four (4)

months into the first evaluation period for the MIP. And, the Order was not entered until after

the first evaluation period for the MIP was completed. Once the Order was entered after the

completion of the first half of the MIP, the management employees failed to meet the required

goals and did not earn any additional bonuses under the MIP. This weighs against the Debtors

arguments that the management employees relied on the MIP in terms of their efforts to reorganize the Debtors.

The Debtors also argue again that there will be prejudice if the appeal is not dismissed because the Committee and Trustee "took no action whatsoever to prosecute this appeal over the last year." As previously noted, the Committee and Trustee were prohibited from taking any further action to prosecute this appeal until the parties had completed the mandatory mediation required by the Mediation Order. The mediation has not taken place over the last year because the Debtors have failed to pay their portion of the mediator's fees or execute the mediator's engagement agreement. Therefore, any prejudice resulting from a delay of the appeal falls squarely with the Debtors, not the Committee or Trustee.

The Debtors also argue that they were reasonable in relying on the Order in implementing the MIP. The Debtors, however, were clearly on notice the day that the Committee and the Trustee filed their appeals that the Bankruptcy Court's Order may not be final. *See Stamford*, 2004 WL 1465760 at *2.

Public policy, as embodied in Congress' rational for amending Section 503 of the Bankruptcy Code (enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), P.L. 109-8, is another factor that equitably weighs against dismissal of this appeal. Congress amended Section 503 of the Bankruptcy Code in response to a flood of public opinion in opposition to excessive and unnecessary key employee retention plans ("KERPs"). *See* George W. Kuney, *Hijacking Chapter 11*, 21 Emory Bankr. Dev. J. 19, 79-90 (2004) (citing A. Mechele Dickerson, *Approving Employee Retention and Severance Programs: Judicial Discretion Run Amuck?*, 11 Amer. Bankr. Inst. L. Rev. 93, 93 (2003)); Ien Cheng, *Barons of Bankruptcy Part I: Survivors Who Laughed All the Way to the Bank*, Fin. Times

- 15 -

(London), July 31, 2002, at 10 (reporting that executives and directors of bankruptcy companies have mad "extraordinary personal fortunes" totaling $3.3 billion). The legislative history accompanying BAPCPA confirms Congress' intent to "significantly restrict" a debtor's "ability to pay bonuses, severance payments, and other payments to insiders of the debtor after the bankruptcy case is filed." See H.R.Rep. No. 109-31 (109th Cong., 1st Sess. 2005) at 19. According to Collier on Bankruptcy, the purpose of Section 503(c) is to "limit the scope of 'key employee retention plans' and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor." 4 Collier on Bankruptcy, 15th Ed. Revised 2005, pp. 503-580. Despite this significant change in the Bankruptcy Code, the Debtors not only sought approval of the MIP, but also paid bonuses to members of management under the Undisclosed Bonus Program. Having two bonus programs is inconsistent with amended Section 503 and violates the public policy of advanced by the amended Section 503 that significantly limits a debtor's ability to pay bonuses to insiders post-petition.

The Debtors also argue that the money has already been paid to employees that are not parties to this appeal and; therefore, the *res* at issue is no longer part of the estates and not recoverable. If this were a determining factor, parties could avoid all bankruptcy appeals just by paying money, transferring title, or taking other actions to transfer the *res* out of the estates the day the order is entered. There is nothing in the Bankruptcy Code that would prohibit the Debtors from pursuing the recipients of the bonuses for the return of the monies paid. Accordingly, this factor also does not weigh in favor of dismissing the appeal as equitably moot.

WILLIB-54465.3-KELAWSON 7/30/07 6:48 PM

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that this Court deny the

Debtors' motion to dismiss the appeal as either constitutionally or equitably moot.

Dated: July 30, 2007                    Respectfully submitted,
   Wilmington, Delaware
           REED SMITH LLP


       By: /s/ Kimberly E. C. Lawson
          Kurt F. Gwynne (No. 3951)
          Kimberly E.C. Lawson (No. 3966)
          1201 Market Street, Suite 1500
          Wilmington, DE  19801
          Telephone:  (302) 778-7500
          Facsimile:  (302) 778-7575

          Attorneys for The Official Committee
          of Unsecured Creditors

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NELLSON NUTRACEUTICAL, INC., *et al.*,          Debtors. | : | Case No. 06-10072 (CSS) |
| | : | Jointly Administered |
| | : | |
| _____ | : | |
| | : | |
| UNITED STATES TRUSTEE and OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | : | Civil Action Nos. 06-00520 (GMS) and 06-00521 (GMS) |
| | : | |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| NELLSON NUTRACEUTICAL, INC., *et al.*, | : | |
| | : | |
| Appellees. | : | |
| _____ | : | |

## CERTIFICATE OF SERVICE

I, Kimberly E. C. Lawson, Esquire, do hereby certify that, on the 30th day of June 2007, I caused a true and correct copy of the foregoing *Answering Brief Of The Official Committee Of Unsecured Creditors To Appellees' Motion To Dismiss Appeal On Mootness Grounds* be served upon the addressees on the attached service list in the manner indicated.

/s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson, Esq. (No. 3966)

**NELLSON NUTRACEUTICAL, INC.**
MIP Appeal Service List

**VIA HAND DELIVERY**
J. Richard Tucker, Esquire
Maron Marvel Bradley & Anderson, P.A.
1201 N. Market Street, Suite 900
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
Suzzanne Uhland, Esquire
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305

**VIA HAND DELIVERY**
Laura Davis Jones, Esquire
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Maxim B. Litvak, Esquire
Rachel Lowy Werkheiser, Esquire
Pachulski, Stang, Ziehl, Young, Jones
  & Weintraub LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801

**VIA HAND DELIVERY**
William K Harrington, Esquire
Joseph J. McMahon, Jr., Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

**VIA HAND DELIVERY**
Mark D. Collins, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

**VIA HAND DELIVERY**
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market St., Suite 1200
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017

**VIA HAND DELIVERY**
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
Fred Hodara, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY 10022

**VIA FIRST CLASS MAIL**
John P. Sheahan, Esquire
United States Department of Justice
Executive Office for United States Trustees
20 Massachusetts Avenue, N.W.
Washington, DC 20530