IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Civil Action No. 06-00520-GMS, 06-00521-GMS

In re: NELLSON NUTRACEUTICAL, INC., et al.

*Debtors.*

Bankruptcy Case No. 06-10072 (CSS)

**UNITED STATES TRUSTEE AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

*Appellants,*

**v.**

**NELLSON NUTRACEUTICAL, INC., et al.**

*Appellees.*

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
(Christopher S. Sontchi, Judge)

**REPLY IN SUPPORT OF APPELLEES' MOTION TO
DISMISS APPEAL ON MOOTNESS GROUNDS**

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

Counsel for the Appellees

DATED:      August 15, 2007

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.............................................................................................................................3

    A.    The Doctrine of Constitutional Mootness. ...............................................................3

    B.    The Doctrine of Equitable Mootness.......................................................................6

CONCLUSION............................................................................................................................9

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Continental Airlines*, 91 F.3d 553 (3d Cir. 1996) ..................................................... 2, 3, 6, 7

*In the Matter of Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004) ....................................................... 4, 5

*Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622 (4th Cir. 2002) .......................................... 7

*Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. Inc. v. Official Comm. of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 988 F.2d 322 (2d Cir. 1993) ...................................................... 3

*U.S. Trustee v. Official Comm. of Equity Security Holders (In re Zenith Elecs. Corp.)*, 329 F.3d 338 (3d Cir. 2003) .................................................. passim

*United States v. Palma*, 760 F.2d 475 (3d Cir. 1985) .................................................................. 4

*Zinchiak v. CIT Small Business Lending Corp.*, 406 F.3d 214 n. 9 (3d Cir. 2005) ........................ 4

## Statutes

11 U.S.C. § 549 ............................................................................................................... 1, 5

ii

## PRELIMINARY STATEMENT

The United States Trustee (the "UST") and the Official Committee of Unsecured Creditors (the "Committee," and together with the UST, the "Appellants") make two principal arguments in support of their objections to the pending motion to dismiss this appeal on mootness grounds, filed by the above-captioned debtors and debtors in possession (collectively, the Debtors").[1]  The Appellants primarily rely on the Third Circuit's decision in *U.S. Trustee v. Official Comm. of Equity Security Holders (In re Zenith Elecs. Corp.)*, 329 F.3d 338 (3d Cir. 2003), which is distinguishable on various grounds.

First, despite the fact that all amounts owed under the management incentive plan (the "MIP") at issue in this appeal were distributed more than one year ago, the Appellants argue that this appeal is not constitutionally moot because this Court could still fashion a remedy by forcing the Debtors' employees to disgorge the monies that they earned under the MIP.  This is not a viable option.  Unlike the bankruptcy professionals in *Zenith*, the Debtors' employees are not parties to this appeal.  Most of them have no idea that this appeal is even pending.  The Debtors' employees also cannot be expected to know that the incentive payments that they earned through their hard work and dedication to the estate could be subject to additional court scrutiny or possibly even disgorgement years after the fact.  Hence, as a matter of due process, disgorgement is simply not an appropriate remedy in this case.  It is also inconceivable that the Debtors could seek to avoid the payments under the MIP as unauthorized postpetition transfers pursuant to section 549 of the Bankruptcy Code.  These payments were expressly authorized by the Bankruptcy Court and, even if that decision were ever overturned on appeal, there is no way

---

[1]  Capitalized terms not defined herein shall have the meanings set forth in the Debtors' motion to dismiss.

that such payments could be pursued within the two-year limitations period imposed by the statute.

Second, the Appellants take the position that this appeal is not equitably moot because no plan has been confirmed. Although the weight of Third Circuit authority on the doctrine of equitable mootness focuses on "substantial consummation" of a plan, there is no requirement or logical basis to limit the scope of this doctrine solely to appeals of plan confirmation orders. *See Zenith*, 329 F.3d at 343 (enumerating five factors that "have been considered by courts in determining whether it would be equitable to reach the merits of a bankruptcy appeal," which "include" whether the plan has been substantially consummated). As recognized by the Third Circuit in *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996) (*en banc*), equitable mootness is a "widely recognized and accepted doctrine" that "an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *See also Zenith*, 329 F.3d 343 (same). This doctrine applies with equal force to the Order that is currently on appeal.

Ultimately, this appeal should be dismissed as moot because the Appellants sat on their rights -- they failed to seek a stay pending appeal or to diligently pursue this appeal.[2] The Order has now been fully consummated and has expired by its own terms. Under these circumstances, it would be constitutionally improper and wholly unfair to even contemplate that the Debtors' employees could be forced to pay for the Appellants' lack of diligence.

---

[2]  The Committee claims that the Debtors failed to timely execute a mediation agreement and thereby delayed the prosecution of this appeal. However, the Debtors merely waited for the Committee and the UST, the Appellants in this case, to execute the agreement first. That apparently did not happen until very recently. In the interim, the mediator continued periodically to contact all parties asking them to sign the agreement. It is disingenuous for the Committee to suggest that the Debtors somehow delayed this appeal when the Appellants themselves did not bother to proceed with the mediation process.

2

**ARGUMENT**

A.    **The Doctrine of Constitutional Mootness.**

The doctrine of constitutional mootness is grounded on the principle that an appeal is moot "if events have taken place during the pendency of the appeal that make it 'impossible for the court to grant any effectual relief whatsoever.'" *Continental Airlines*, 91 F.3d at 558. The Debtors have cited extensive authority in their opening brief, including the Second Circuit's frequently-quoted decision in *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. Inc. v. Official Comm. of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 988 F.2d 322 (2d Cir. 1993), to the effect that there is no viable remedy available when the funds at issue in the appeal have already been distributed to transferees who are not parties to the appeal.

The Appellants argue, however, that this Court can yet render an effective remedy in this appeal by requiring that the Debtors' employees disgorge the funds that they received over one year ago for achieving certain performance objectives under the MIP. In support of their position, the Appellants principally rely on a footnote in the Third Circuit's decision in *Zenith*, 329 F.3d at 340 n.1. In that case, the court concluded that the appeal of a fee award to a committee's professionals was not constitutionally moot despite the fact that such fees had already been paid. *Id. Zenith* is easily distinguishable from the case at hand because the professionals in *Zenith* were parties to the appeal. *Id.* ("We note that other parties to this appeal – the Professionals themselves – clearly continue to exist . . . ."). Given that the transferees of the funds at issue in *Zenith* were parties to the appeal, it is not surprising that the court concluded that any fees paid to such professionals could be disgorged, particularly given that the

3

Bankruptcy Court had specifically retained jurisdiction to act on any request for payment of an administrative claim.[3]  *Id.*

The instant case is very different. The Debtors' employees are not parties to this appeal. Contrary to the Appellants' assertions, the Debtors' employees are not the ones pulling the strings in connection with this appeal. Most of them do not even know that this appeal is pending. From the perspective of the Debtors' employees, all payments that were made under the MIP last year should be, for all practical purposes, ancient history. The MIP has served its purpose. It incentivized employees during calendar year 2006. Certain of the targets under the MIP were reached; others were not. The Order has now expired by its terms and all payments thereunder were made over one year ago. Under these circumstances, there is no relief whatsoever that this Court could now fashion, within the confines of due process, to get money back from the Debtors' hard working employees who are not parties to this appeal.[4]

The Appellants also cite the Seventh Circuit's decision in *In the Matter of Kmart Corp.*, 359 F.3d 866, 869 (7th Cir. 2004), for the proposition that the disbursement of funds to third party transferees (*i.e.*, "critical vendors") prior to the resolution of an appeal does not prevent the court from ordering disgorgement. The decision in *Kmart*, however, did not involve the doctrine of constitutional mootness. The court merely concluded that reversing preferential

---

[3]  The UST also relies on the Third Circuit's decision in *Zinchiak v. CIT Small Business Lending Corp.*, 406 F.3d 214, 223 n. 9 (3d Cir. 2005), to make the point that an appeal is not constitutionally moot when the remedy of disgorgement is available. Much like *Zenith*, however, disgorgement was a viable remedy in *Zinchiak* because the transferee (a lender) was a party to the appeal.

[4]  The UST argues that the Debtors lack standing to raise due process arguments on behalf of third parties under *United States v. Palma*, 760 F.2d 475, 477 (3d Cir. 1985). The decision in *Palma*, however, merely recognized that "a party has standing to challenge the *constitutionality of a statute* only insofar as it has an adverse impact on his own rights." *Id.* (emphasis added). The Debtors do not seek to challenge the constitutionality of any statute. The Debtors simply point out that it would be impossible for this Court to fashion a remedy against employees of the Debtors who are not parties to this appeal.

4

transfers to prepetition creditors was an entirely "ordinary feature of bankruptcy practice[.]" *Id.*
The critical vendor order that was on appeal in *Kmart* also expressly contemplated that any
payments thereunder were "provisional" and subject to the rights of any interested person to
object to the amount of any critical vendor claims. A true and correct copy of the *Order Under
11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Critical Vendors*,
dated Jan. 26, 2002, entered in the *Kmart* case is attached hereto as Exhibit A.

In the instant case, by contrast, the possibility of seeking disgorgement of court-
approved payments to the Debtors' employees is far from customary. In fact, in *Chateaugay* and
other cases cited in the Debtors' opening brief, courts have declined to pursue employees or
former employees on the basis that it would be impracticable and inappropriate to do so. It also
bears mention that, unlike the "critical vendors" in *Kmart*, the Debtors' employees had no notice
by virtue of the Order (and the lack of a stay pending appeal) that their incentive payments could
be subject to further scrutiny years after the fact. Indeed, so much time has passed since the last
payments were made under the MIP in July 2006, that there is no chance (no matter what
happens in this appeal) that such payments could be pursued as avoidable postpetition transfers
within the two year limitations period under section 549 of the Bankruptcy Code.[5] *See* 11 U.S.C.
§ 549. Assuming that this appeal is not dismissed on mootness grounds and given that there is
not even a briefing schedule yet in place, it would take many months, if not years, to complete
the appellate process. By then, the two-year limitations period under section 549 will have run.

---

[5] Section 549 of the Bankruptcy Code provides, in relevant part, that the trustee may avoid a transfer of
property of the estate that occurs after the commencement of the case "that is not authorized under this
title or by the court." The payments under the MIP were expressly authorized by the Bankruptcy Court,
but even if that decision were ever overturned on appeal, section 549 provides that any action or
proceeding under this section may not be commenced after the earlier of: (1) two years after the date of
the transfer sought to be avoided; or (2) the time the case is closed or dismissed.

Hence, there is simply nothing that this Court can do, consistent with the requirements of due process, that would force the Debtors' employees, who are not parties to this appeal, to refund monies paid to them by the estate over one year ago. In this regard, contrary to the Committee's arguments, the Debtors are not taking the position that their employees should have been made parties to this appeal. Rather, given that the Debtors' employees are not properly parties to this appeal and the Order expressly contemplated payments to such employees under the MIP totaling up to $1.395 million, the Committee (and the UST) should have sought a stay pending appeal to prevent any disbursement of funds. Instead, the Appellants did nothing to stop this appeal from being rendered moot. They must now face the consequences of their own inaction. This appeal should be dismissed as constitutionally moot.

**B.      The Doctrine of Equitable Mootness.**

The doctrine of equitable mootness contemplates that an appeal should be dismissed if granting the requested relief would be "inequitable." *Continental Airlines*, 91 F.3d at 559 (citing *Chateaugay*, 988 F.2d at 325).

The Appellants argue that this doctrine only applies in the event that a reorganization plan has been substantially consummated, which has not yet occurred in this case. Admittedly, the factors that the Third Circuit has outlined in *Continental Airlines* and its progeny include substantial consummation of a plan as a key consideration. *See id.* at 5560. There is no absolute requirement, however, that the doctrine of equitable mootness is limited to appeals of plan confirmation orders. It also makes intuitive sense that, even outside of a plan, there could be situations (such as the one here) where permitting an appeal to go forward could have a disastrous effect on the Debtors' ability to successfully reorganize.

6

The factors listed in *Continental Airlines* that courts have considered in determining whether it would be equitable to reach the merits of an appeal are not meant to be exhaustive or exclusive. In *Continental Airlines* (and in *Zenith*), the Third Circuit stated that such factors "include" substantial consummation of a plan, but thereby left open the possibility that additional, or altogether different, factors could also be considered. *Continental Airlines*, 91 F.3d at 560; *Zenith*, 329 F.3d at 434; *see also Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002) (noting that "equitable mootness is a pragmatic principle" and recognizing substantial consummation of "other equitable relief" outside of a plan as a relevant inquiry for purposes of the doctrine). The decision in *Zenith* underscores this point by noting that the issue of whether a plan has been substantially consummated does not "merely entail a formalistic inquiry[.]" The key issue is the impact that an appeal could have on the plan and, ultimately, the debtor's reorganization efforts. *See Zenith*, 329 F.3d 344-45.

Here, the possibility of overturning the MIP at this late stage (over one year after the last payments were made to employees) could have a disastrous effect on employee morale and on the Debtors' business. The Debtors have fully implemented the MIP. The Debtors' employees relied on the MIP and worked hard throughout calendar year 2006 towards achieving the performance targets thereunder. Certain of these targets were met. Consistent with the MIP and the Bankruptcy Court's Order, the Debtors funded the MIP. If the Debtors' key management employees were hypothetically required to return the money that they earned under the MIP, the Debtors could face a mass exodus of management personnel, which in turn, could "knock the props out from under" any reasonable effort to successfully reorganize this estate. *See Zenith*, 329 F.3d at 344-45 (quotations omitted).

7

In this context, it also bears mention that substantially all of the Debtors' operating assets are currently up for sale (a sale hearing is presently scheduled for August 23, 2007). The Debtors envision a going concern sale that will require the buyer to hire the vast majority of the Debtors' employees, including most of the individuals who were covered by the MIP. Any rational buyer will insist that its newly-retained employees cannot be the subject of any potential litigation claims that may be asserted by the Debtors. Hence, the mere fact that this appeal is pending and the effect that it could have on transitioning employees may raise serious issues in the mind of a buyer that could result in bid chilling.

In sum, regardless of whether a plan has been confirmed in this case, the reason that this appeal should be dismissed is that the Debtors' reorganization could be put at risk if the Debtors' payments to employees were to be overturned. Simply too much time has passed since the payments were made. The Debtors are now at a critical juncture where this appeal presents an unnecessary distraction and risk to the Debtors' reorganization efforts. At the same time, it is solely the result of the Appellants' lack of diligence that has brought them to this point. They did not obtain, or even bother to seek, a stay pending appeal. They also have taken no substantive action to prosecute this appeal. Accordingly, even though the Debtors' bankruptcy cases are at a late stage and the Debtors' business is on the verge of a sale, this appeal has progressed little past the point of filing a notice of appeal.

The Debtors have outlined in their opening brief the remaining factors that support dismissal of this appeal on equitable grounds. The Debtors urge this Court to consider the practicalities that the doctrine of equitable mootness was designed to address. The fact that no plan has been consummated in this case does not change the fact that the Order at issue in this appeal has been fully implemented and has expired by its own terms. Most importantly, the

8

continuance of this appeal threatens the Debtors' business and reorganization efforts. Under these unique circumstances, this appeal should be dismissed on equitable grounds.

## CONCLUSION

This appeal is moot on the basis of the doctrines of constitutional and equitable mootness. For the reasons set forth above and in the Debtors' opening brief, the Debtors respectfully request that this Court dismiss this appeal on mootness grounds.

Dated: August 15, 2007

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

*Rachel L. Werkheiser*

Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszyjw.com
        rpachulski@pszyjw.com
        bgodshall@pszyjw.com
        mlitvak@pszyjw.com
        rwerkheiser@pszyjw.com

Counsel for Appellees

9

# EXHIBIT A



EOD JAN 26 2002

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re: )
) Case No. 02-B02474
) (Jointly Administered)
KMART CORPORATION, et al., ) Chapter 11
) Chief Judge Susan Pierson Sonderby ·
)
Debtors. )

## ORDER UNDER 11 U.S.C. § 105(a) AUTHORIZING THE PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL TRADE VENDORS

Upon the motion dated January 22, 2002 (the "Motion"), wherein

Kmart Corporation ("Kmart") and certain of its domestic subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors" or the "Company"), moved this Court for entry of an order, pursuant to

section 105(a) authorizing the Debtors to pay Critical Vendor Claims; it appearing to

the Court that (i) it has jurisdiction over the matters raised in the Motion pursuant to

28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

157(b)(2); (iii) the relief requested in the Motion is in the best interests of the

Debtors, their estates and their creditors; (iv) proper and adequate notice of the

Motion and the hearing thereon has been given and that no other or further notice is

necessary; and (v) upon the record herein, including the exhibits attached to the

Notice of Filing of Exhibits as Ordered by the Court at the January 22, 2002 Hearing,

122

filed on or about January 25, 2002, after due deliberation thereon, the relief should be granted as set forth below,

    1.     The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all, a portion or none of the prepetition claims (the "Critical Vendor Claims") of the following "Critical Vendors": (a) Fleming Companies, Inc.; (b) Handleman Company; (c) vendors who supply egg and dairy and (d) certain newspapers, printers, paper suppliers and other vendors who supply goods and services related to the Debtors' advertising program.  The payment of the Critical Vendor Claims shall not exceed those set forth in the Motion upon such terms and in the manner provided in this Order and subject to the provisions of the Debtors' postpetition financing agreement.

    2.     Any checks used by the Debtors to pay Critical Vendor Claims shall contain a legend substantially in the following form:

> By accepting this check, the payee agrees to the terms of that certain Order of the United States Bankruptcy Court for the Northern District of Illinois, dated as of _____, in the payor's chapter 11 case (Case No. _____ ), entitled "Order Under 11 U.S.C. § 105(a) Authorizing the Payment of Prepetition Claims of Certain Critical Trade Vendors," (including, if applicable, any Trade Agreement entered into pursuant to that Order) and submits to the jurisdiction of that Court for enforcement thereof.

    3.     The Debtors shall undertake appropriate efforts to cause Critical Vendors to enter into an agreement with the Debtors as provided herein as a condition

of payment of their Critical Vendor Claims, which agreement shall include the

following terms:

      (a)    The amount of such Critical Vendor's estimated Critical Vendor Claims, accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Critical Vendor and the Debtors (but such amount shall be used only for the purposes of determining such Critical Vendor's claim under this Order and shall not be deemed a claim allowed by the Court and the rights of all interested persons to object to such claim shall be fully preserved until further order of this Court);

      (b)    The Customary Trade Terms between such Critical Vendor and the Debtors, or such other terms as the Critical Vendors and the Debtors may agree;

      (c)    The Critical Vendor's agreement to provide goods and services to the Debtors based upon Customary Trade Terms or on such other favorable terms as the Debtors and the Critical Vendor may otherwise agree, for a period at least two (2) years from the Petition Date, and the Debtors' agreement to pay in accordance with such terms;

      (d)    The Critical Vendor's agreement not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien"), regardless of the statute or other legal authority upon which such Lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date, and, to the extent the Critical Vendor has already obtained or otherwise asserted such a Lien, the Critical Vendor shall take whatever actions are necessary to remove such Lien;

      (e)    The Critical Vendor's acknowledgment that is has reviewed the terms and provisions of this Order and consents to be bound hereby; and

      (f)    The Critical Vendor's agreement that it will not separately seek payment for reclamation claims outside the terms of this Order unless the Critical Vendor's participation in the program to pay Critical Vendor Claims pursuant to this Order is terminated; provided, however, that such reclamation claims

3

shall, if thereafter raised by the Critical Vendor as permitted by this Order, be treated as though raised on the date of this Order.

An agreement executed by and between the Debtors and a Critical Vendor as set forth in this paragraph shall be referred to as a "Trade Agreement." This order is intended to authorize, but shall not require, the Debtors to enter into Trade Agreements, it being the express intention of this Court that the Debtors shall enter into Trade Agreements only when the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so.

4. The Debtors are authorized, in their discretion to make payments on account of Critical Vendor Claims in the absence of a Trade Agreement after the Debtors have undertaken diligent efforts to cause the Critical Vendor holding such Critical Vendor Claim to execute a Trade Agreement and if the Debtors determine, in their business judgment, that failure to pay the Critical Vendor Claim is likely to result in irreparable harm to the Debtors' business operations.

5. If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Critical Vendor Claim, or fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtors, then the Debtors may, in their discretion and without further order of the Court, (a) declare that any Trade Agreement between the Debtors and such Critical Vendor is terminated (if applicable), and (b) declare that

4

provisional payments made to Critical Vendors on account of Critical Vendor Claims be deemed to have been in payment of then-outstanding post-petition claims of such vendors without further order of the Court or action by any person or entity, and, to the extent that payments on account of such Critical Vendor Claims exceed the postpetition claims of such vendors then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. In the event a Trade Agreement is terminated or a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Critical Vendor Claim, it is the explicit intention of this Court to return the parties to their position immediately prior to the entry of the order approving this Motion with respect to all prepetition claims.

6.      The Debtors may, in their sole discretion, reinstate a Trade Agreement if:

(a)      Such determination is subsequently reversed by the Court, after notice and a hearing following a motion by the Critical Vendor, for good cause shown that the determination was materially incorrect;

(b)      The underlying default under the Trade Agreement was fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor that a default had occurred; or

(c)      The Debtors, in their discretion, reach a favorable alternative agreement with the Critical Vendor.

5

7.    Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Critical Vendor Claim.

8.    Nothing contained in this order shall be deemed to constitute an assumption or rejection of any executory contract or agreement between the Debtors and a Critical Vendor or to require the Debtors to make any of the payments authorized herein.

9.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

10.    This Court shall retain jurisdiction to construe and enforce this Order.

Dated: Chicago, Illinois
        January 2 5 2002

_____
Chief Judge Susan Pierson Sonderby
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:

NELLSON NUTRACEUTICAL, INC., et al.,

|  Debtors.  |  |
|---|---|
| UNITED STATES TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | |
| Appellants, | Civil Action No. 06-520 (GMS) Civil Action No. 06-521 (GMS) |
| v. | |
| NELLSON NUTRACEUTICAL, INC., et al., | Bankruptcy Case No. 06-10072 (CSS) Appeal No. 06-45 |
| Appellees. | |

## **AFFIDAVIT OF SERVICE**

      I, Rachel Lowy Werkheiser, hereby certify that on this 15th day of August, 2007,

I caused a true and correct copy of the below-referenced document(s) to be served on the

individuals on the attached service list(s) in the manner indicated thereon:

      REPLY IN SUPPORT OF APPELLEES' MOTION TO DISMISS APPEAL ON
MOOTNESS GROUNDS

*Rachel L Werkheiser*

Rachel Lowy Werkheiser (Bar No. 3753)

59903-001\DOCS_DE:130014.1

**Nellson Nutraceutical, Inc. Appeal Service List**
Case No. 06-10072 (CSS)
Document No. 120478
02 – Interoffice Delivery
06 – Hand Delivery
05 – First Class Mail

(Counsel to the Debtors)
Laura Davis Jones, Esquire
Rachel Lowy Werkheiser, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Interoffice Mail**
(Counsel to the Debtors)
Maxim B. Litvak, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
150 California Street, 15th Floor
San Francisco, CA  94111

**Interoffice Mail**
(Counsel to the Debtors)
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA  90067

**Hand Delivery**
(United States Trustee)
William Harrington, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**Hand Delivery**
(Mediator)
J. Richard Tucker, Esquire
Maron Marvel Bradley & Anderson, P.A.
1201 N. Market Street, Suite 900
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Fremont Investors VII, LLC)
Mark D. Collins, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Informal Committee of First Lien
Lenders)
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to UBS)
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the Official Committee of
Unsecured Creditors)
Kurt F. Gwynne, Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE  19801

**First Class Mail**
(Counsel to UBS)
James J. Holman , Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA

**First Class Mail**
(Counsel to UBS)
Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA  90017

**First Class Mail**
(Counsel to Fremont Investors VII, LLC)
Suzzanne Uhland, Esquire
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111-3305

**Fist Class Mail**
(Counsel to the Ad Hoc Committee of First
Lien Lenders)
Fred Hodara, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY  10022

**First Class Mail**
(Counsel to the Official Committee of
Unsecured Creditors)
Claudia Springer, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103